13 CV 5899

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DR. LORI SIMON, DR. BEZALEL DANTZ,
DR. PETER HAHN, and DR. TRACEY MARKS,
on Behalf of Themselves and Others
Similarly Situated,

Plaintiffs,

- against -

NEW YORK AND PRESBYTERIAN HOSPITAL,

Defendant.
-----------------------------------------------------------x



**CLASS ACTION
COMPLAINT AND
<u>JURY DEMAND</u>**

Plaintiffs Dr. Lori Simon, Dr. Bezalel Dantz, Dr. Peter Hahn, and Dr. Tracey

Marks ("Plaintiffs"), on behalf of themselves and others similarly situated, for their Complaint,

allege as follows:

<u>PRELIMINARY STATEMENT</u>

1.      Plaintiffs bring this action on behalf of a class consisting of themselves

and all other persons who were medical residents, including fellows in training programs (the

"Medical Residents") in the New York and Presbyterian Hospital ("NYP" or "Defendant") Weill

Cornell Residency Program from January 1, 1995, through and including June 30, 2001 (the

"Class Period").  Starting in 2010 and due to an Internal Revenue Service ("IRS") administrative

determination, the Medical Residents were each eligible for substantial refunds of tens of

thousands of dollars for the Federal Insurance Contribution Act ("FICA") payroll taxes that they

had paid on their wages during the Class Period.  Following years of litigation and a string of

1

defeats, the IRS determined that during the Class Period, the Medical Residents were exempt from FICA tax under the "student exception."

2.      However, the Medical Residents will never receive these valuable refunds – for one reason.  Unbeknownst to them, NYP secretly agreed with the IRS not to protect and pursue the FICA refunds for the Medical Residents during the Class Period.  Under the FICA scheme, employers withhold and pay their employees' share of the FICA taxes and also pay the employer's share.  NYP therefore withheld FICA taxes from the Medical Residents' wages and in turn paid these taxes to the government.  Consistent with the employer's responsibilities as the conduit of the taxes on behalf of the individual taxpayer to the government, NYP also could and should have filed "FICA Protective Refund Claims" for the Medical Residents during the Class Period.  Such protective claims tolled the statute of limitations on future claims for a tax refunds. On information and belief, most comparable institutions to NYP took this exact step on behalf of their own medical residents.  This practice was widespread as the tide of litigation turned in the late 1990s and it became increasingly apparent that courts would exempt medical residents from FICA taxes under the "student exception."  Indeed, NYP itself filed such FICA Protective Refund Claims during the Class Period for medical residents at Columbia, the sister residency program to Weill Cornell's.

3.      For Plaintiffs, however, NYP never filed FICA Protective Refund Claims. In exchange for the settlement of an unrelated tax dispute between NYP and the IRS (and an apparently significant financial benefit to NYP), NYP agreed to forfeit the rights of the Medical Residents to obtain the FICA refunds for the Class Period and agreed with the government not to file FICA Protective Refund Claims on their behalf.   Despite knowing that the FICA refund

2

claims were enormously valuable (so valuable that the IRS sought to extinguish them in its settlement with NYP) and that the legal landscape was on the cusp of a favorable ruling, NYP signed away its duty to file protective claims on behalf of the Medical Residents.  NYP knew that absent its own action to protect these claims, Medical Residents would not act – because they knew nothing about the issue or the option to file a "protective claim."   NYP never even notified the Medical Residents of its settlement deal with the IRS, nor did it suggest or encourage Medical Residents to take alternative steps to protect their future refund claims. These were the same Medical Residents who had enrolled in the Weill Cornell Residency Program as trainees, with the expectation that NYP would train, nurture, and protect their interests as young doctors working long hours in NYP's clinics and hospitals for little pay.

4.      NYP's calculated decision not to file FICA Protective Refunds Claims to preserve the Medical Residents' rights to obtain for FICA refunds is inexcusable.  NYP elevated its own financial interests over the interests of its trainee doctors, secretly bargaining away their rights and their money without their knowledge and consent, and banking on the fact that the Medical Residents trusted that NYP would act in their best interests at all times with respect to their tax obligations.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is predicated upon 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class of plaintiffs are citizens of a State different from Defendant.

6.     The acts complained of occurred in the Southern District of New York and the Defendant resides in this district and is subject to the Court's personal jurisdiction.  Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

7.     Plaintiffs demand trial by jury in this action.

## THE PARTIES

8.     Plaintiff Lori Simon is a citizen of the United States and a resident of New Jersey.  Dr. Simon was a resident in the NYP/Weill Cornell Residency Program from 1996 to 2000.

9.     Plaintiff Bezalel Dantz is a citizen of the United States and a resident of Illinois.  Dr. Dantz was a resident in the NYP/Weill Cornell Residency Program from 1995 to 2000.

10.    Plaintiff Tracey Marks is a citizen of the United States and a resident of Georgia.  Dr. Marks was a resident in the NYP/Weill Cornell Residency Program from 1996 to 2000 and a fellow in the NYP/Weill Cornell-NYP/Columbia Forensic Psychiatry program in 2001.

11.    Plaintiff Peter Hahn is a citizen of the United States and a resident of Massachusetts.  Dr. Hahn was a resident in the NYP/Weill Cornell Residency Program from 1998 to 2001.

12.    Defendant The New York and Presbyterian Hospital is based in New York City and is one of the nation's largest not-for-profit, non-sectarian hospitals.  It provides medical care in all areas of medicine at six major centers in New York City and Westchester, and is

4

affiliated with two Ivy League medical schools – Weill Cornell Medical College and Columbia University College of Physicians and Surgeons.

13.     Defendant's website explains that The New York and Presbyterian Hospital is the successor by merger of two former hospitals which employed Plaintiffs and similarly situated medical residents enrolled in ACGME accredited programs at what are now known as the Weill Cornell Campus (the "NYP/Weill Cornell Residency Program") and the Columbia Campus (the "NYP/Columbia Residency Program").  Since the merger, Defendant now employs Medical Residents in both the NYP/Weill Cornell and NYP/Columbia Residency Programs.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23(b)(3), on behalf of themselves and other individuals similarly situated who were medical residents, including fellows in training programs  in the NYP/Weill Cornell Residency Program from January 1, 1995, through and including June 30, 2001 ("the Class Period"), for violations of their common law rights.

15.     All of the members of the Rule (b)(3) class were injured as a result of Defendant's conduct.  On information and belief, the Rule (b)(3) class includes hundreds of individuals.   On information and belief, a single class of medical residents at the NYP/Weill Cornell Residency Program in 1995 consisted of approximately 100 medical residents.  They are so numerous that joinder of all class members is impracticable.

16.     The questions of law and fact presented by Plaintiffs are common to other members of the class.  Among others, the questions of law and fact common to the class are:

- Whether NYP had a fiduciary duty to Plaintiffs and the putative class to file FICA Protective Refund Claims during the Class Period;

- Whether NYP had a fiduciary duty to Plaintiffs and the putative class to disclose that it had not filed for FICA Protective Refund Claims during the Class Period because it had entered into a settlement agreement with the IRS in which it agreed not to file such claims on behalf of the Medical Residents;

- Whether NYP concealed from the Medical Residents that it had entered into a settlement agreement with the IRS in which it agreed not to file such claims on behalf of the Medical Residents;

- Whether NYP knowingly made false, material representations to the Medical Residents which they relied upon in not filing their own FICA refund claims;

- The amount of FICA due to each resident had Defendant filed FICA Protective Refund Claims.

17.    Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

18.    The claims and practices alleged in this complaint are common to all members of the class.

19.    The violations suffered by Plaintiffs are typical of those suffered by the class.  The entire class will benefit from the monetary relief sought.

20.     Plaintiffs have no conflict of interest with any class members, and will fairly and adequately protect the interests of the class

21.     Counsel competent and experienced in federal class action and federal civil rights litigation has been retained to represent the class.  Emery Celli Brinckerhoff & Abady LLP is a law firm with offices in New York City with extensive experience in complex litigation and class action lawsuits.

22.     This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members is impracticable.  The damages suffered by certain members of the class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly impractical for such class members to attempt individual redress for damages.

23.     There will be no extraordinary difficulty in the management of the class action.

## FACTS

24.     The New York and Presbyterian Hospital is the successor by merger of two former hospitals, one of which employed Plaintiffs when they were enrolled as medical residents in the NYP/Weill Cornell Residency Program.

**FICA and the "Student Exemption"**

25.     "FICA" stands for the Federal Insurance Contributions Act.  FICA taxes are comprised of two separate taxes, Social Security and Medicare taxes.  FICA taxes are paid on wages earned for services performed.  Employers withhold and pay their employees' share of the FICA taxes and also pay the employer share.

7

26.     Under the FICA scheme, employers are responsible for collecting, safeguarding the employees' share of the FICA taxes, and transmitting those funds to the Internal Revenue Service.

27.     According to the IRS, hospitals and medical schools began filing FICA refund claims in the 1990s based on their position that medical residents were students eligible for FICA tax exemption under IRS section 3121(b)(10) (hereinafter "FICA Protective Refund Claims"). This is referred as the "student exemption" and may apply to a student at a school, college, or university who is also an employee of that school, college, or university. In these cases, the employers filed a claim for a refund of overpaid FICA tax for both its (employer) share and, on behalf of medical resident employees, for their share.

28.     Other institutions filed FICA Protective Refund Claims on behalf of their medical residents for the time period beginning in 1995 ending April 2005, including, for example, the Mount Sinai Hospital/School of Medicine ("Mount Sinai timely filed refund claims on behalf of its residents for periods prior to April 2005 and has established a process to obtain refunds plus statutory interest from the IRS.").

29.     Upon information and belief, the vast majority of FICA Protective Refund Claims filed between 1995 and 2005 were filed by institutions such as hospitals, and not by individual medical residents, and those individual medical residents who did file were told to do so by their training institutions.

30.     When the IRS declined to refund the money sought by the filing of the FICA Protective Refund Claims, many universities and hospitals filed suit around the country.

8

31.     A significant legal victory was achieved in 1998 in the case of *State of Minn. v. Apfel*, 151 F.3d 742, 747-48 (8th Cir. 1998).   In *Apfel*, the Eighth Circuit ruled in favor of the University of Minnesota that its medical house staff were "students" and therefore were exempt from the payment of FICA taxes.  The Court recognized that the primary purpose of the medical residents' relationship with the University of Minnesota was educational and to pursue a course of study rather than to earn a livelihood.

32.     The *Apfel* opinion generated significant activity amongst medical centers and hospitals, resulting in many institutions filing FICA Protective Refund Claims.

33.     Following the 1998 decision, other U.S. Courts of Appeals rendered decisions regarding medical residents' eligibility for the student FICA exemption and held that medical residents are or could be eligible for the student FICA exemption.  *See*, *e.g*., *United States v. Mt. Sinai Medical Center of Florida, Inc.*, 486 F.3d 1248 (11th Cir. 2007) (holding that "the services performed by medical residents are not categorically ineligible for the student exemption from FICA taxation.").

34.     By the late 1990s when the Medical Residents completed their medical training in the NYP/Weill Cornell Residency Program, Defendant knew that the legal landscape was shifting fast with respect to the question of whether Medical Residents could be considered exempt from Federal Insurance Contribution Act ("FICA") taxes for Social Security and Medicare taxes paid on wages, because they were students (and not employees), and therefore exempt from taxes under the so-called "student exception."

35.     On April 1, 2005, new regulations regarding the student FICA exemption became effective.  One part of these regulations states that an employee who works 40 hours or more for a school, college, or university is not eligible for the student exemption.

36.     On or about March 2, 2010, the IRS made an administrative determination and conceded that medical residents are exempt from FICA taxes for tax periods ending before April 1, 2005.  *See* IR-2010-25.  According to the IRS, institutions that employed medical residents and individual medical residents became eligible to receive refunds if they were covered by timely FICA refund claims.

37.     For those institutions that had timely filed FICA Protective Refund Claims, the IRS decided that it would refund the FICA tax paid (plus statutory interest) for services performed as a medical resident.  The IRS stated in its March 2, 2010 announcement that it would contact institutions that timely filed FICA Protective Refund Claims for the period prior to April 1, 2005 within 90 days.

38.     Following this March 2010 determination, employers that had timely filed FICA Protective Refund Claims had the opportunity to submit "perfected" FICA Refund Claims to the IRS pursuant to the information provided by the IRS in its Letter 4608 dated May 25, 2010.

39.     As acknowledged by the IRS, "[u]nder the FICA refund scheme, the employer acts as a fiduciary in bringing the refund claim on behalf of consenting employees."

40.     Following receipt of the perfected FICA Refund Claims, the IRS verified the eligibility of these claims, and if accepted and approved, refunded to the employers the

amounts of FICA tax paid in the applicable years plus statutory interest for distribution to eligible medical residents.

41.     The IRS will not accept a new claim for a refund for FICA taxes for tax periods ending before April 1, 2005, because the statute of limitations for filing such a claim has now expired.  On April 17, 2013, the IRS opined that no prior FICA Protective Refund Claims could be filed because the last date such claims could be filed was April 15, 2009.

**Defendant's Failure to File FICA Protective Refund Claims for Plaintiffs**

42.     Defendant filed FICA Protective Refund Claims with the IRS for Social Security and Medicare taxes paid on wages earned by eligible medical residents in the NYP/Weill Cornell Residency Program for calendar years July 1, 2001 through March 31, 2005.

43.     Defendant also filed FICA Protective Refund Claims for the NYP/Columbia Residency Program for calendar years 1995 and 1997 through March 31, 2005, although not for calendar year 1996.

44.     Defendant did not file FICA Protective Refund Claims for the NYP/Weill Cornell Residency Program for calendar years 1995 through June 30, 2001.

45.     According to its website, Defendant did not file the FICA Protective Refund Claims for the NYP/Weill Cornell Residency Program for calendar years 1995 through June 30, 2001 because it entered into a settlement agreement with the IRS concerning "unrelated tax issues."

46.     As part of that settlement agreement between Defendant and the IRS of "unrelated tax issues," Defendant agreed not to file FICA Protective Refund Claims for the NYP/Weill Cornell Residency Program for calendar years 1995 through 2001.

11

47.     At no time did Defendant ever notify Plaintiffs, or upon information and belief, any NYP/Weill Cornell medical residents, to inform them that Defendant had entered into a 1999 settlement agreement with the IRS agreeing not to file FICA Protective Refund Claims on their behalf.  Nor did Defendant ever contact the Medical Residents to notify them to file these valuable claims on their own behalf, since NYP had agreed not to.  Instead, Defendant kept this critical information secret, despite the fact that Defendant was filing FICA Protective Refund Claims for the "sister" NYP/Columbia Residency Program during the exact same time period.

48.     At no time prior to its secret agreement with the IRS not to file FICA Protective Refund Claims on behalf of the Medical Residents did Defendant ever seek their consent to forfeit their entitlement to FICA refunds in exchange for a benefit to the institution, and Plaintiffs never so consented.

49.     Defendant's secret agreement in 1999 with the IRS followed the *Apfel* decision in 1998 by only one year.  Upon information and belief, the Eighth Circuit's adoption of the "student exemption" for medical residents gave notice to Defendant that the FICA Protective Refund Claims on behalf of medical residents were likely to be successful, and thus should be filed and protected – not bargained away without their consent in a backroom deal with the IRS.

50.     In exchange for agreeing with the IRS not to submit FICA Protective Refund Claims on behalf Plaintiffs for the years 1995-June 30, 2001, Defendant received valuable consideration.

51.     Defendant occupied a position of superior knowledge and information regarding the FICA Protective Refund Claims than the Medical Residents, including with respect

12

to its knowledge of the state of litigation over the "student exemption" from FICA taxes and the repercussions of filing (or not filing) protective claims starting in 1999.

52.     As a result of Defendant's decision not to file FICA Protective Refund Claims on behalf of the Medical Residents, Plaintiffs and the putative class are not eligible to receive a refund for their FICA taxes paid for the years 1995 to June 30, 2001.

53.     Following the IRS's determination in March 2010 that it would allow FICA Refund Claims for tax periods prior to April 1, 2005 where timely protective claims had been filed, Defendant retained Deloitte Tax LLP to assist in submitting and settling FICA refund claims for those years (1995-2005) for which it had filed FICA Protective Refund Claims on behalf of the medical residents in the NYP/Columbia Residency Program and for those years (July 1, 2001-2005) for which it had filed FICA Protective Refund Claims on behalf of the medical residents in the NYP/Cornell Residency Program (and thus who were not subject to Defendant's secret 1999 agreement with the IRS).

54.     On behalf of Defendant, Deloitte solicited consent forms from medical residents authorizing the Defendant to obtain the refunds for the time periods for which the Defendant had filed FICA Protective Refund Claims.

55.     During 2011, Defendant's website states that it submitted "perfected" FICA Refunds Claims to the IRS and that the IRS "has accepted perfected FICA Refund Claims for all years filed by the Hospital except for 2003 and 2004."   The Defendant's website further states that "the IRS has recently completed its processing of the Hospital's perfected FICA Refund Claims and has remitted the refunds to the Hospital for distribution for most of the quarters claimed. . . . The Hospital is the midst of processing the refunds it has received for

distribution to eligible Medical Residents and expects that process to be completed by July 31, 2013."

**Defendant's Ongoing Attempts to Deceive and Mislead Plaintiffs**

56. Also following the IRS's statement in March 2010 that it would accept the position that medical residents are exempt from FICA taxes for tax periods ending before April 1, 2005, Plaintiffs and other former residents began to contact Defendant seeking information about their entitlement to FICA refunds.

57. For example, plaintiff Dr. Dantz contacted Defendant seeking information about his entitlement to a FICA refund. Defendant informed Dr. Dantz that it would file on his behalf. At no time did Defendant inform Dr. Dantz that it had intentionally failed to filed FICA Protective Refund Claims on his behalf and thus that no FICA refund was forthcoming to him.

58. More recently, when Dr. Dantz's peers at other medical schools began receiving their FICA refund checks, Dr. Dantz again contacted Defendant. Only then was he informed that Defendant had failed to file a FICA Protective Refund on his behalf.

59. Defendant acted in a fiduciary capacity for Plaintiffs as medical residents enrolled in a training program who reposed confidence and trust in Defendant.

**Plaintiff Dr. Lori Simon**

60. Dr. Simon was a resident in psychiatry in the NYP/Weill Cornell Residency Program between 1996 and 2000.

61. On information and belief, Dr. Simon paid approximately $4,000 per year in FICA taxes during the Class Period. Pursuant to the IRS's 2010 administrative determination,

Dr. Simon was exempt from FICA taxes paid while she was a medical resident in the NYP/Weill

Cornell Residency Program for the years 1996, 1997, 1998, 1999, and 2000.

62.     As a result of Defendant's failure to timely file a FICA Protective Refund

Claim on her behalf or to advise her that she should file such a claim herself, Dr. Simon is not

eligible to receive a refund for the FICA taxes she paid during the Class Period.

63.     In April 2013, after learning for the first time that some medical residents

were receiving FICA refunds, Dr. Simon contacted Defendant's Corporate Finance Director to

inquire about her eligibility for a FICA refund.

64.     Upon learning of Defendant's conduct, Dr. Simon assumed a leadership

role in educating other former medical residents in the NYP/Weill Cornell Program during the

Class Period about what had occurred and whether a remedy existed.   To date, Dr. Simon has

taken substantial steps on behalf of the class to organize former trainees, inform former trainees

of the issue and their potential claims, maintain and participate in a "listserv" of former trainees

dedicated to the FICA refund issue, and contact lawyers seeking information about the legal

rights of the trainees.

65.     For example, Dr. Simon established a Google drive form to enable former

trainees to enter their contact information and training year information in support of the pursuit

of potential remedies for their non-receipt of FICA refunds.  As of today, 125 former trainees

have entered their information into Dr. Simon's database which she maintains on a regular basis.

**Plaintiff Dr. Bezalel Dantz**

66.     Dr. Dantz was a resident in internal medicine and psychiatry in the

NYP/Weill Cornell Residency Program between 1995 and 2000.

67.     On information and belief, Dr. Dantz paid approximately $4,000 per year in FICA taxes during the Class Period.  Pursuant to the IRS's 2010 administrative determination, Dr. Dantz was exempt from FICA taxes paid while he was a medical resident in the NYP/Weill Cornell Residency Program for the years 1995, 1996, 1997, 1998, 1999, and 2000.

68.     As a result of Defendant's failure to timely file a FICA Protective Refund Claim on his behalf or to advise him that he should file such a claim himself, Dr. Dantz is not eligible to receive a refund for the FICA taxes he paid during the Class Period with the exception of 1997.

**Plaintiff Dr. Tracey Marks**

69.     Dr. Marks was a resident in psychiatry in the NYP/Weill Cornell Residency Program between 1996 and 2000, and a fellow in the NYP/Weill Cornell-NYP/Columbia Forensic Psychiatry program in 2001.

70.     On information and belief, Dr. Marks paid approximately $4,000 per year in FICA taxes during the Class Period.  Pursuant to the IRS's 2010 administrative determination, Dr. Marks was exempt from FICA taxes paid while she was a medical resident in the NYP/Weill Cornell Residency Program for the years 1996, 1997, 1998, 1999, and 2000, and as a fellow in 2001.  As a result of Defendant's failure to timely file a FICA Protective Refund Claim on her behalf or to advise her that she should file such a claim herself, Dr. Marks is not eligible to receive a refund for the FICA taxes she paid during the Class Period.

**Plaintiff Dr. Peter Hahn**

71.     Dr. Hahn was a resident in internal medicine in the NYP/Weill Cornell Residency Program between 1998 and 2001.

16

72.     On information and belief, Dr. Hahn paid approximately $4,000 per year in FICA taxes during the Class Period.  Pursuant to the IRS's 2010 administrative determination, Dr. Hahn was exempt from FICA taxes paid while he was a medical resident in the NYP/Weill Cornell Residency Program for the years 1998, 1999, 2000, and through June 30, 2001.

73.     As a result of Defendant's failure to timely file a FICA Protective Refund Claim on his behalf or to advise him that he should file such a claim himself, Dr. Hahn is not eligible to receive a refund for the FICA taxes he paid during the Class Period.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

74.     Plaintiffs repeat, reiterate, and reallege each and every prior paragraph.

75.     At all relevant times, Defendant had a fiduciary relationship with Plaintiffs because it acted as Plaintiffs' agent for purposes of asserting refund claims with the IRS, and as also as an employer charged with collecting, securing and transmitting FICA payments to the IRS on Plaintiffs' behalf, and thus had a duty to act in good faith, trust, and candor towards Plaintiffs.

76.     Defendant breached its fiduciary duty by agreeing to forego Plaintiffs' valuable refund claims in exchange solely for its own monetary benefit and failing to inform Plaintiffs of its misconduct so that Plaintiffs could take steps to protect their financial interests.

77.     As a result of Defendant's actions, Plaintiffs have suffered financial injuries in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

78.     Plaintiffs repeat, reiterate, and reallege each and every prior paragraph.

79.    By wrongfully bargaining away Plaintiffs' valuable FICA refund claims, Defendant was unjustly enriched.

80.    Such enrichment was at Plaintiffs' expense, insofar as it resulted in Plaintiffs' loss of their refund claims, and redounded to Defendant's benefit, insofar as Defendant received a more financially beneficial settlement with the IRS than had they refused to bargain away Plaintiffs' rights.

81.    In equity and good conscience, Defendant should not be allowed to retain the benefits of its misconduct without compensating Plaintiffs.

82.    By virtue of Defendant's acts and omissions, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs and members of the class request the following relief against Defendant:

1.      An order certifying this case as a class action;

2.      A judgment declaring that Defendant has committed the violations of law alleged

in this action;

3.      Compensatory damages in an amount to be proven at trial;

4.      Punitive damages in an amount to be proven at trial; and

5.      Such other and further relief that may be just and proper.


Dated: August 21, 2013
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
       Katherine Rosenfeld
       Matthew D. Brinckerhoff
       Zoe Salzman

75 Rockefeller Plaza - 20th Floor
New York, New York 10019
(212) 763-5000

*Attorneys for Plaintiffs and the Putative Class*