UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DR. HENRY ERLE CHILDERS, IV and DR.
GEORGE BINO RUCKER, on Behalf of
Themselves And All Others Similarly Situated,

      Plaintiffs,

   - against -

THE NEW YORK AND PRESBYTERIAN
HOSPITAL,

      Defendant.

13 CV 5414 (LGS)

ECF Case
Electronically Filed

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DR. LORI SIMON, DR. BEZALEL DANTZ,
DR. PETER HAHN, and DR. TRACEY
MARKS, on Behalf of Themselves And All
Others Similarly Situated,

      Plaintiffs,

   - against -

THE NEW YORK AND PRESBYTERIAN
HOSPITAL,

      Defendant.

13 CV 5899 (LGS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE NEW YORK AND PRESBYTERIAN HOSPITAL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS

Maura Barry Grinalds
Robert L. Dunn
Daniel W. J. Becker
Erin Simmons
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036
Tel.: (212) 735-3000

*Attorneys for Defendant The New
 York and Presbyterian Hospital*

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................3

I.    SECTION 7422 PREEMPTION SQUARELY APPLIES HERE ......................................3

      A.    The Complaints Plainly Seek the Refund of FICA Taxes Withheld ......................3

      B.    Plaintiffs Necessarily Contend the FICA Taxes Here Were
            Wrongfully Assessed, and Even If They Were Not, Plaintiffs'
            Strained View of the Law Would Yield An Absurd Result....................................5

      C.    Declining to Apply Section 7422 To Preempt This Suit Would
            Thwart Public Policy Set Forth By Congress ........................................................8

II.   THE COMPLAINTS FAIL TO STATE ANY  CLAIM UPON WHICH
      RELIEF MAY BE GRANTED ...........................................................................10

      A.    Standard of Review and Appropriateness of Dismissal........................................10

      B.    The Breach of Fiduciary Duty Claims Fail...........................................................12

            1.    The Hospital Was Not A Fiduciary With Respect To
                  Plaintiffs' Taxes............................................................................................12

            2.    Even if There Were a Duty, There Was No Breach Because
                  the Residents At All Times Were Free To File Their Own
                  Claims .............................................................................................20

      C.    The Childers Complaint Fails To State a Negligence Claim..................................20

      D.    The Childers Complaint Fails to State a Fraud Claim ...........................................21

            1.    There Was No "Special Relationship" And The "Special
                  Facts Doctrine" Does Not Apply .................................................................22

            2.    Plaintiffs Also Do Not Allege Reasonable Reliance .................................22

      E.    The Childers Complaint Fails to State a Contract Claim.......................................23

      F.    The Childers Complaint Fails To State A Claim For Constructive
            Fraud And Negligent Misrepresentation................................................................25

      G.    Plaintiffs Have Not Pleaded That The Hospital Was Unjustly
            Enriched .................................................................................................26

III.  ALL OF PLAINTIFFS' CLAIMS ARE TIME BARRED................................................27

A.    Because The "Injury" Occurred As Early As 1999 And No Later Than 2005, The Claims Are Time-Barred ............................................................27

B.    Plaintiffs' Claims Are Not Saved By Equitable Tolling Or The Two-Year Discovery Rule For Fraud ....................................................................29

CONCLUSION.......................................................................................................................30

## TABLE OF AUTHORITIES

246 Sears Road Realty Corp. v. Exxon Mobil Corp.,
    No. 09-CV-889 NGG JMA, 2012 WL 4174862 (E.D.N.Y. Sept. 18, 2012)........23

Abbas v. Dixon,
    480 F.3d 636 (2d Cir. 2007)......................................................................28

Abercrombie v. Andrew College,
    438 F. Supp. 2d 243 (S.D.N.Y. 2006)............................................11, 29

Abernathy-Thomas Engineering Co. v. Pall Corp.,
    103 F. Supp. 2d 582 (E.D.N.Y. 2000) ..........................................21

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995)............................................................2

Atlantic Department Stores, Inc. v. United States,
    557 F.2d 957 (2d Cir. 1977).......................................................4, 14, 23

Austin v. Albany Law School of Union University,
    38 Misc. 3d 988 (Sup. Ct. Albany County 2013) .................................13

Avila v. Lease Finance Group, LLC,
    No. 11-Civ-8125(KBF), 2012 WL 3165408 (S.D.N.Y. July 31, 2012) ...............28

Bartak v. Commissioner,
    87 T.C.M. (CCH) 1152, 2004 WL 565455 (2004), aff'd, 158 F. App'x 43
    (9th Cir. 2005).........................................................................14

Baruch v. Schmiegelow,
    175 F. App'x 422 (2d Cir. 2006) ...............................................3

Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.,
    601 F. Supp. 770 (S.D.N.Y. 1985) ...........................................22

Berera v. MESA Medical Group, PLLC,
    No. 5:13-cv-294-JMH, 2014 WL 29386 (E.D. Kent. Jan. 3, 2014) ......................9

Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,
    12 F.3d 1292 (3d Cir. 1993)......................................................16

Blumberg v. Altman,
    15 Misc. 3d 1140(A), 2007 N.Y. Slip Op. 51060(U) (N.Y. Sup. Ct. 2007)............9

Brennan v. Southwest Airlines Co.,
    134 F.3d 1405 (9th Cir. 1998) ..................................................4, 5

Broder v. Cablevision Systems Corp.,
    418 F.3d 187 (2d Cir. 2005)..................................................................24

Brooklyn Union Gas Co. v Hunter Turbo Corp.,
    241 A.D.2d 505 (2d Dep't 1997)..........................................................28

Burdett v. Miller,
    957 F.2d 1375 (7th Cir. 1992) .............................................................16

Cohen v. Avanade, Inc.,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012)...................................................25

Conroy v. Dannon Co.,
    No. 12 CV 6901(VB), 2013 WL 4799164 (S.D.N.Y. May 9, 2013).....................2

Cortec Industries, Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)...................................................................14

Davidson v. Henkel Corp.,
    No. 12-cv-14103, 2013 WL 3863981 (E.D. Mich. July 24, 2013).................3, 7, 8

Deleu v. Scaife,
    775 F. Supp. 712 (S.D.N.Y. 1991) .......................................................13

Devlin v. Empire Blue Cross & Blue Shield,
    274 F.3d 76 (2d Cir. 2001)...................................................................16

Doe v. Holy See (State of Vatican City),
    17 A.D.2d 793 (3d Dep't 2005)............................................................13

Donovan v. The Aeolian Co.,
    270 N.Y. 267 (1936) ...........................................................................22

Dresses for Less, Inc. v. CIT Group/Commercial Services, Inc.,
    No. 01 CIV. 2669(WHP), 2002 WL 31164482 (S.D.N.Y. Sept. 30, 2002) ..........11

DuPont Glore Forgan Inc. v. AT&T Co.,
    428 F. Supp. 1297 aff'd sub nom. AT&T Co. v. United States, 578 F.2d
    1366 (2d Cir. 1978), and aff'd, 578 F.2d 1367 (2d Cir. 1978)...................... *passim*

East Ramapo Central School District v. DeLorenzo,
    No. 13-CV-1613 (CS), 2013 WL 5508392 (S.D.N.Y. Oct. 3, 2013) ....................2

Ehrlich v. American Airlines, Inc.,
    360 F.3d 366 (2d Cir. 2004)...................................................................8

Eurycleia Partners, LP v. Seward & Kissel, LLP,
    12 N.Y.3d 553 (N.Y. 2009) ..................................................................11

iv

Faktor v. Yahoo! Inc.,
      No. 12 CIV. 5220(RA), 2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013)...........11, 15

G. ex rel. G. v. Athletic Alliance Risk Purchasing Grp., 193 Misc. 2d 190
      (Sup. Ct. Nassau County 2002)...........................................................................21

Gaines Service Leasing Corp. v. Carmel Plastic Corp.,
      105 Misc. 2d 694 (N.Y. Civ. Ct. Kings County 1980) (sale of a van), aff'd,
      113 Misc. 2d 752 (N.Y. App. Term 1981)...........................................................22

Gavish v. Revlon, Inc.,
      No. 00 Civ. 7291(SHS), 2004 WL 2210269 (S.D.N.Y. Sep. 30, 2004) ...............10

Golek v. Saint Mary's Hospital, Inc.,
      34 A.3d 452 (Conn. App. Ct. 2012)....................................................................13

Granat v. Center Art Galleries–Hawaii Inc.,
      No. 91 CIV 7252 (RLC), 1993 WL 403977 (S.D.N.Y. Oct. 6, 1993)................11

Heineman v. S & S Machinery Corp.,
      750 F. Supp. 1179 (E.D.N.Y. 1990) ...................................................................22

Hutton v. Klabal,
      726 F. Supp. 67 (S.D.N.Y. 1989) ......................................................................19

Intellectual Capital Partner v. Institutional Credit Partners LLC,
      No. 08 Civ. 10580(DC), 2009 WL 1974392 (S.D.N.Y. July 8, 2009) .................26

Johnson v. Schmitz,
      119 F. Supp. 2d 90 (D. Conn. 2000)...................................................................17

Kaucky v. Southwest Airlines Co.,
      109 F.3d 349 (7th Cir. 1997) ...................................................................4, 6, 7, 18

Kimmell v. Schaefer,
      89 N.Y.2d 257 (1966) ........................................................................................25

King County, Washington v. IKB Deutsche Industriebank AG
      863 F. Supp. 2d 288 (S.D.N.Y. 2012)................................................................25

Koch v. Christie's International PLC,
      699 F.3d 141 (2d Cir. 2012)..........................................................................28, 29

Kramer v. Time Warner Inc.,
      937 F.2d 767 (2d Cir. 1991)...............................................................................14

Lavin v. Kaufman, Greenhut, Lebowitz & Forman,
      226 A.D.2d 107 (1st Dep't 1996) .......................................................................15

v

Lehman v. USAIR Group, Inc.,
 930 F. Supp. 912 (S.D.N.Y. 1996) ........................................................4

Lerner v. Fleet Bank, N.A.,
 459 F.3d 273 (2d Cir. 2006)................................................................11

Long v. Frank, 22 F.3d 54 (2d Cir. 1994)................................................30

Louisiana Municipal Employees' Retirement System v. JPMorgan Chase & Co.,
 No. 12 Civ. 6659(DLC), 2013 WL 3357173 (S.D.N.Y. July 3, 2013).................19

Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Insurance Services,
 388 F. Supp. 2d 292 (S.D.N.Y. 2005)....................................................11

Macy's N.Y., Inc. v. United States,
 484 F. Supp. 181 (S.D.N.Y. 1980) ...................................................4, 14

Makarova v. United States,
 201 F.3d 110 (2d Cir. 2000)..................................................................3

Mandarin Trading Ltd. v. Wildenstein,
 16 N.Y.3d 173 (2011) ......................................................................26

Matthew v. RCN Corp.,
 No. 12 Civ. 0185 (JMF), 2012 WL 5834917 (S.D.N.Y. Nov. 14, 2012) ........3, 5, 7

Mayo Foundation for Medical Education & Research v. United States,
 131 S. Ct. 704 (2011)......................................................................13

Mechigian v. Art Capital Corp.,
 612 F. Supp. 1421 (S.D.N.Y. 1985)....................................................19

Meriden International Bank Ltd. v. Government of the Republic of Liberia,
 23 F. Supp. 2d 439 (S.D.N.Y. 1998)....................................................30

Mikulski v. Centerior Energy Corp.,
 501 F.3d 555 (6th Cir. 2007) ...........................................................7, 9

Mills v. United States,
 890 F.2d 1133 (11th Cir. 1989) .........................................................14

Mills v. M.A.B.S.T.O.A.,
 No. 87 CIV 8497 (LBS), 1988 WL 132848 (S.D.N.Y. Dec. 8, 1988) ...................9

Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A.,
 645 F. Supp. 2d 248 (S.D.N.Y. 2009)................................................21

Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,
 261 F.R.D. 13(S.D.N.Y. 2009), aff'd, 382 F. App'x 107 (2d Cir. 2010) ..............15

Nallan v. Helmsley-Spear, Inc.,
    50 N.Y.2d 507 (1980) ..............................................................................21

Nelson v. Regan,
    731 F.2d 105 (2d Cir. 1984), abrogated by Sorenson v. Secretary of
    Treasury of United States, 475 U.S. 851 (1986)......................................7

Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.,
    485 F. Supp. 2d 387 (S.D.N.Y. 2007)..............................................5, 13

P.T. Bank Central Asia, N.Y. Branch v. ABN AMRO Bank N.V.,
    301 A.D.2d 373 (1st Dep't 2003) .........................................................22

Parvi v. City of Kingston,
    41 N.Y.2d 553 (1977) ..............................................................................21

Powers v. St. John's University School of Law,
    110 A.D.3d 888 (2d Dep't 2013)...........................................................24

Rose v. Simms,
    No. 95 CIV. 1466(LMM), 1995 WL 702307 (S.D.N.Y. Nov. 29, 1995).............15

Ross v. FSG PrivatAir Inc.,
    No. 03 Civ. 7292 (NRB), 2004 WL 1837366 (S.D.N.Y. Aug. 16, 2004) .............17

Ryan v. University of North Carolina Hospitals,
    609 S.E.2d 498 (table), 2005 WL 465554 (N.C. App. 2005) ................................13

S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,
    84 F.3d 629 (2d Cir. 1996)....................................................................11

St. John's University v. Bolton,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...........................................16, 28

Salomon Bros. v. Huitong International Trust & Investment Corp.,
    No. 94 Civ. 8559 (LAP), 1996 WL 675795 (S.D.N.Y. Nov. 21, 1996)...............11

Scott v. Dime Savings Bank of New York,
    886 F. Supp. 1073 (S.D.N.Y. 1995), aff'd, 101 F.3d 107 (2d Cir. 1996) .............11

Snyder v Town Insulation,
    81 N.Y.2d 429 (1993) ...........................................................................28

State of N.Y. v. Hendrickson Bros., Inc.,
    840 F.2d 1065, 1083 (2d Cir. 1988)......................................................29

Travis v. Knappenberger,
    No. CIV. 00-393-HU, 2000 WL 1853084 (D. Or. Dec. 13, 2000)........................18

UniCredito Italiano SPA v. JPMorgan Chase Bank,
        288 F. Supp. 2d 485 (S.D.N.Y. 2003)................................................................22

United States v. Allen,
        No. 1:91CV0244, 1992 WL 437652 (N.D. Ohio Nov. 24, 1992) ........................18

United States v. Bradford,
        160 F.2d 729 (2d Cir. 1947)...............................................................................20

United States v. Clintwood Elkhorn Mining Co.,
        553 U.S. 1 (2008)..............................................................................................4, 7

United States v. Stevens,
        211 F.3d 1 (2d Cir. 2000)....................................................................................14

USA United Holdings, Inc. v. Tse-Peo, Inc.,
        23 Misc. 3d 1114(A)(table), 2009 WL 1099462 (Sup. Ct. Kings County
        2009) ..................................................................................................................14

Wilson v. Dantas,
        No. 12 Civ. 3238(GBD), 2013 WL 92999 (S.D.N.Y. Jan. 7, 2013).....................12

Wolf v. City of New York,
        39 N.Y.2d 568 (1976) ........................................................................................21

**STATUTES, REGULATIONS AND ADMINISTRATIVE MATERIALS**

26 U.S.C. § 6110(k)(3) .................................................................................................14

26 U.S.C. § 7422........................................................................................... *passim*

26 U.S.C. § 7422(a) ...................................................................................................6, 8

26 U.S.C. § 7422(f)(1) ..................................................................................................9

Rev. Rul. 2009-39, 2009-52 I.R.B. 951 .......................................................................15

Treas. Reg. § 31.6402(a)-2(a) .......................................................................14, 15, 16, 20

Treas. Reg. § 31.6402(b)-2(a)........................................................................................6

Treas. Reg. § 31.3121(b)(10)-2(d)(3)(i) .......................................................................13

Student FICA Exception, 69 Fed. Reg. 8604-01, 8605 (Feb. 25, 2004)..........................13

Chief Counsel Advisory, I.R.S. C.C.A. 201307006, 2013 WL 582463 (June 21,
        2012) ..................................................................................................................14

## PRELIMINARY STATEMENT

Plaintiffs[1] urge this Court to become the first ever to permit a direct suit against an employer to recover a refund of taxes the employer collected and remitted to the U.S. Treasury as an agent of the IRS.  Even the most generous reading of Plaintiffs' complaints and opposition briefs demonstrates these are quintessential tax refund suits seeking the refund of FICA taxes Plaintiffs can no longer obtain from the IRS because they did not file timely refund claims even though they could have done so – regardless of the Hospital's settlement with the IRS.  Indeed, while insisting that this case does not involve a "claim that anyone is entitled to a tax refund" (Simon Opp. at 13), Plaintiffs repeatedly accuse the Hospital of violating its supposed "duty" to "protect" the residents' "viable FICA refund claims" (Simon Opp. at 23), based on its superior knowledge of the "steps . . . needed to protect their refunds" (id. at 28; see also id. at 13, 22, 23, 28.)  Plaintiffs cannot have it both ways.  They cannot escape federal preemption under Section 7422 by arguing they were not entitled to and do not seek refunds, while simultaneously seeking to hold the Hospital accountable for allegedly failing to obtain those tax refunds.  Given the IRS' position that refund claims are now time-barred, Plaintiffs seek to circumvent IRS exhaustion and timeliness requirements by suing the Hospital for these identical FICA refunds disguised as "damages" for purported "state common-law violations."  However, Section 7422 of the Internal Revenue Code constitutes Plaintiffs' *exclusive* remedy to recover any tax refund and squarely preempts this very suit, depriving this Court of subject matter jurisdiction.

Plaintiffs also ask this Court to become the first ever *retroactively* to impose upon employers a purported "fiduciary duty" to file speculative FICA refund claims for employees, even when the IRS was publicly denying all similar claims and courts in this Circuit were still

---

[1]    Unless otherwise stated, capitalized terms have the same meaning as the Hospital's Memorandum of Law in Support Of Its Motion To Dismiss ("Memorandum of Law") or ("Mem.") and all emphasis is added.

endorsing the IRS' position.  Not only does this newly-minted duty offend basic notions of

fairness and lack any legal basis, it directly contravenes the FICA statutory refund scheme,

which only requires employers to act on behalf of employees *if* the employer seeks its own FICA

refund – which the Hospital did not do here.  Creating this unprecedented new duty would

unleash a torrent of new claims against employers in general, and teaching hospitals in particular,

for failure to file protective claims and/or alert employees to all conceivable future tax refund

opportunities.  Congress unequivocally precluded such claims by its broadly-construed

preemption scheme.

Plaintiffs' other common-law claims also fail because the Hospital had no legal duty to

file FICA refund claims or provide tax advice to residents.  The unjust enrichment claim likewise

fails because the Hospital was not enriched *at Plaintiffs' expense*, because it could not and did

not prevent residents from filing their own refund claims, and therefore did not "forfeit" or "trade

away" their rights.  Finally, all of the claims are time-barred because they accrued, at the very

latest, by 2005.  Plaintiffs ignore that it is *their* burden to plead facts supporting equitable tolling,

and do not allege a single representation by the Hospital that it was filing refund claims for the

class, a single inquiry by any resident to the Hospital or the IRS during the entire decade when

timely claims could be filed as to whether the Hospital *had* filed, or any diligence whatsoever to

discover their claims before the statute of limitations expired.  The Court should therefore

dismiss all of Plaintiffs' claims, with prejudice.[2]

---

[2]   Disregarding the Court's Individual Rules, which permit one chance to amend (Individual Rule III.C.2), and Plaintiffs' decision to stand on their pleadings in response to the Hospital's pre-motion letters and motion to dismiss, Plaintiffs ask that dismissal be without prejudice.  Leave to amend should be denied as futile, Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995), where there is no federal subject matter jurisdiction, East Ramapo Central School District v. DeLorenzo, No. 13-CV-1613 (CS), 2013 WL 5508392, at *9 (S.D.N.Y. Oct. 3, 2013), Plaintiffs do not state a claim Conroy v. Dannon Co., No. 12 CV 6901(VB), 2013 WL 4799164, at *10 (S.D.N.Y. May 9, 2013), and Plaintiffs fail to identify any facts they could allege to state a non-preempted, cognizable claim. Id.

## ARGUMENT

## I.   SECTION 7422 PREEMPTION SQUARELY APPLIES HERE

As a threshold matter, Plaintiffs ignore that it is ***Plaintiffs' burden*** to establish subject

matter jurisdiction.  (See Mem. at 10); see also Baruch v. Schmiegelow, 175 F. App'x 422, 422

(2d Cir. 2006).[3]  The Hospital demonstrated that subject matter jurisdiction is lacking here

because Section 7422 broadly preempts suits seeking tax refunds against private entities

collecting taxes on behalf of the IRS and requires taxpayers to bring timely claims directly and

***only*** against the United States.  (Mem. at 11-15.)  The Hospital also demonstrated that courts

have uniformly recognized that Congress drafted Section 7422 broadly to foreclose even

"artfully pleaded" tax refund suits disguised as state law claims.  (See id. at 16-19.)  Plaintiffs'

Oppositions attempt to skirt Section 7422 by arguing that (1) they do not seek a tax refund, and

(2) the FICA taxes at issue were not "wrongfully" withheld.  These arguments lack merit.

### A.   The Complaints Plainly Seek the Refund of FICA Taxes Withheld

To dodge the dispositive impact of federal preemption, Plaintiffs strain to argue these are

not tax refund suits but rather suits for breach of a purported duty to "file FICA refund claims,"

(Childers Opp. at 15), or "disclose the need to do so," which allegedly made Plaintiffs "not

eligible to receive a refund for their FICA taxes" (Simon Opp. at 4).  Dressing up claims against

a tax collector to recover overpaid taxes as alleged breaches of separate state law duties is

precisely the type of "artful pleading" that courts, including this Court, consistently reject.  See

Matthew v. RCN Corp., No. 12 Civ. 0185 (JMF), 2012 WL 5834917, at *4 (S.D.N.Y. Nov. 14,

---

[3]     Even Plaintiffs' lead case recognizes this burden.  Davidson v. Henkel Corp., No. 12-cv-14103, 2013 WL 3863981, at *3 (E.D. Mich. July 24, 2013) ("In analyzing a motion filed pursuant to Rule 12(b)(1), [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . The plaintiff bears the burden of demonstrating subject matter jurisdiction.") (citations and internal quotations omitted) (alteration in original).  Plaintiffs' assertion they are entitled to favorable inferences (Simon Opp. at 5) does not affect that it is the ***plaintiff*** who ultimately bears the burden of establishing jurisdiction.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

2012) ("[C]ourts have made clear that [Section 7422] applies **to any tax refund suit, whether or not labeled as such and whether or not under federal law**."); Lehman v. USAIR Grp., Inc., 930 F. Supp. 912, 916 (S.D.N.Y. 1996) (Section 7422 preempted state law conversion and unjust enrichment claims seeking return of excise taxes because such claims were for "disguised refunds of the taxes"); see also Mem. at 13-17 (citing cases).  No amount of "disguised" pleading or wordsmithing the tax refunds as "favorable tax treatment" (Simon Opp. at 6) can circumvent Section 7422.[4]  See United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 9 (2008) (Section 7422 preemption applies to refund suits "whatever the source of the cause of action.").

As the Hospital showed in its Memorandum of Law, artfully pleaded refund suits are barred because they put tax collectors such as the Hospital in an untenable position between the IRS and its employees.  See Kaucky v. Sw. Airlines Co., 109 F.3d 349, 353 (7th Cir. 1997) (Section 7422 is designed to protect collection agents from being "whipsawed" between the IRS and taxpayers); see also Brennan v. Sw. Airlines Co., 134 F.3d 1405, 1411 (9th Cir. 1998) (same). As Judge Weinfeld explained, in words equally applicable here:

> [D]efendants did not choose the role of collecting agents.  The duty to collect the tax was imposed upon defendants by statute enforceable, if necessary, by criminal liability for the convenience of the United States. . . .  If plaintiffs' theory were accepted, however, the defendants would be placed in the position of having to collect taxes at their peril.  Allowing suits such as plaintiffs' might lead to situations in which the collecting agent would be required to refund taxes to the taxpayer but could not recover them from the government . . . [f]or example, if the taxpayer is permitted to sue the collecting agent after the statute of limitations for filing refund claims with the government has expired . . .

---

[4]    Tellingly, even the cases Plaintiffs (incorrectly) rely upon (Simon Opp. at 16) to try to manufacture a purported fiduciary duty here are tax refund cases (albeit against the proper defendant, the United States) which involve a purported duty to recover refunds of "overcollected" or "overpaid" taxes.  See, e.g., Atlantic Dep't Stores, Inc. v. United States, 557 F.2d 957 (2d Cir. 1977) (plaintiff sued the Government for tax refund to recover overpayment of FICA taxes); Macy's N.Y., Inc. v. United States, 484 F. Supp. 181 (S.D.N.Y. 1980) (same).  Plaintiffs cannot rely on tax refund actions to create a duty while disclaiming these are tax refund suits.

4

DuPont Glore Forgan Inc. v. AT&T Co., 428 F. Supp. 1297, 1306 (S.D.N.Y. 1977), aff'd sub

nom. AT&T Co. v. United States, 578 F.2d 1366 and aff'd 578 F.2d 1367 (2d Cir. 1978); accord

Brennan, 134 F.3d at 1411 (similarly explaining preemption prevents scenario of collection agent

being sued by taxpayer for refunds after statute of limitations expires).  While Plaintiffs deny this

suit "puts the Hospital between a rock and a hard place" (Childers Opp. at 14; Simon Opp. at 12),

this is *exactly* what it does.  If permitted to proceed, these actions would require the Hospital to

defend against untimely FICA refund claims even though it long ago remitted the residents' taxes

to the IRS, and cannot obtain a refund from the IRS because the limitations period has run.

Section 7422 precludes such suits.  DuPont Glore Forgan Inc., 428 F. Supp. at 1306.

> **B.     Plaintiffs Necessarily Contend the FICA Taxes Here Were
> Wrongfully Assessed, and Even If They Were Not, Plaintiffs'
> Strained View of the Law Would Yield An Absurd Result___**

Plaintiffs' contention that Section 7422 is inapplicable because the FICA taxes here

allegedly were not "wrongfully" withheld is belied by their own allegations and imposes a new

limitation on Section 7422 no court has ever adopted.[5]  (Mem. at 18-19); see also Matthew, 2012

WL 5834917, at *4 (Section 7422 "applies to *any* tax refund suit" and to any suit "where a

plaintiff sues to recover a sum that was collected as a tax" without any restriction).  Contrary to

Plaintiffs' assertion, this Court need *not* find that the Hospital itself "wrongfully" or "without

legal authority" collected the FICA taxes (see Simon Opp. at 6) because Section 7422 preempts

*any* claim to recover taxes that were *excessive* or erroneously *"assessed"* by the IRS, which is

the *sine qua non* of Plaintiffs' claims.  Plaintiffs' attempts to distort Section 7422 all fail.

---

[5]     Childers Plaintiffs expressly alleged that the taxes were "wrongfully withheld."  (See Childers Compl. ¶¶ 8, 71.)
They now disingenuously try to disavow this judicial admission in their own complaint as an "imprecise adjective."
(Childers Opp. at 14 n.13.)  Leaving aside Plaintiffs' Rule 11 obligation to ensure a colorable basis for all
allegations, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues
raised solely in their briefs."  Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp., 485 F.
Supp. 387, 393 (S.D.N.Y. 2007) (citation omitted) (internal quotation marks omitted) (citing cases).

*First*, any claim to recover a tax refund (or "damages" for the Hospital's failure to file for a refund) is "necessarily based on a claim that the taxes were collected in violation of law," "erroneously . . . assessed" or "excessive"; otherwise the IRS, not Plaintiffs, would be entitled to the taxes.  Kaucky, 109 F.3d at 351.  Section 7422 applies to any suit "in any court for the ***recovery*** of ***any*** internal revenue tax alleged to have been ***erroneously*** or illegally ***assessed*** or collected . . . or of any sum ***alleged to have been excessive*** . . . ."  26 U.S.C. § 7422(a).  The very Treasury Regulation that authorizes claims for FICA refunds – including the refund claims Plaintiffs fault the Hospital for ***not*** filing – only allows refund claims for the "overpayment" of "more than the correct amount" of FICA taxes.  Treas. Reg. § 31.6402(b)-2(a).  Plaintiffs' entire case is predicated on the claim that they are entitled to a refund, which necessarily means that the IRS assessed and the Hospital collected "more than the correct amount" of (i.e. "excessive") FICA taxes, which falls squarely within the purview of Section 7422.  Plaintiffs never explain how the taxes here were somehow "more than the correct amount" (and thus refundable under Treas. Reg. 31.6402(b)-2(a)), but not "excessive" (and thus purportedly outside the scope of Section 7422 preemption). The Court should not countenance Plaintiffs' linguistic gymnastics.

Plaintiffs' next contention – that these taxes were not "wrongfully" collected because they were due at the time and only ***later*** became refundable – is nonsensical and judicially discredited. (See Childers Opp. at 14; Simon Opp. at 6.)  Where the IRS retroactively declares that previously-due taxes are in fact refundable, which it did here (Grinalds MTD Decl. Ex. 6 at 1), the IRS has necessarily determined that those taxes were "erroneously" assessed.  Indeed, this Court has applied Section 7422 preemption and granted a motion to dismiss for lack of subject matter jurisdiction in ***precisely this situation***, where the IRS subsequently reversed its position in the wake of a series of court decisions, rendering earlier-collected taxes improperly collected.

See Matthew, 2012 WL 5834917, at *1 ("Although the IRS continued to assess FET on all long-distance calls during this period, courts eventually held that these time-only rate structures were not taxable under the IRC. . . . [I]n the wake of these rulings, the IRS issued Notice 2006-50 . . . which acknowledged that the IRS had improperly collected FET on time-only long-distance telephone calls."); see also Clintwood Elkhorn, 553 U.S. at 6 (applying § 7422 in suit to recover taxes paid under statute later held unconstitutional); Kaucky, 109 F.3d 349 (suit by class who paid excise tax in 1995, when the tax was still in effect, but did not fly until 1996, when the tax expired, was preempted under §7422).[6]  The fact Plaintiffs "concede they are now ineligible for any tax refund" (Simon Opp. at 8, n.2) does not alter that their case rests on the premise that the FICA taxes were erroneously assessed because residents qualified for the student exception. Plaintiffs' ineligibility now is the result of their failure to file a timely refund claim, as mandated by Section 7422, and demonstrates these actions are an end-run around the tax code's limitations period – precisely what Section 7422 proscribes.[7]  See DuPont Glore, 428 F. Supp. at 1306.

**_Second_**, Plaintiffs fail to refute the Hospital's showing that Plaintiffs' argument that an employer who "wrongfully" withholds taxes is protected from common-law refund suits, but an

---

[6]   Plaintiffs' reliance on Nelson v. Regan, 731 F.2d 105, 109 (2d Cir. 1984), abrogated by Sorenson v. Sec'y of Treasury of U.S., 475 U.S. 851 (1986), is misplaced. (Simon Mem. at 6.)  That case did not involve any refund claim, only the **_diversion of refund checks_** previously issued by the government.  Nelson plaintiffs' federal tax refund checks were "intercepted" by the state of Connecticut to pay the taxpayer's child support obligations during delinquency.  Id. at 107.  Section 7422 did not preempt the taxpayers' claims to recover the intercepted refunds because the IRS had already **_granted_** a refund.  Id. at 109.  Plaintiffs here claim the IRS improperly assessed FICA taxes for which Plaintiffs never got refunds.

[7]   Mikulski v. Centerior Energy Corp., 501 F.3d 555 (6th Cir. 2007) is inapposite.  (See Childers Opp. at 15; Simon Opp. at 7.)  In Mikulski, investors sued a corporation (Centerior) for mishandling its own tax liability, which inflated the shareholders' tax liability.  Id. at 558.  In Mikulski, the Sixth Circuit found "no indication that Congress intended [Section 7422] to be a security holder's exclusive remedy for a company's misreporting of dividends."  Id. at 564.  The Court specifically distinguished Mikulski from the case here in holding that the "expansive application [of Section 7422] does not extend to the present case because Centerior did not collect or withhold any taxes. Centerior was not acting as a collection agent for or on behalf of the IRS."  Id. at 564-65.  Here, the Hospital indisputably acted as a collection agent for the IRS.  Moreover, as in Davidson, plaintiffs never had a claim against the IRS for a refund, and were "not seeking a tax refund" or "accusing the IRS of any wrongdoing."  Id. at 565.  This entire case seeks the refund of wrongfully assessed FICA taxes.

employer like the Hospital who properly withholds taxes is uniquely exposed to refund suits yields an absurd result.  (See Mem. at 18-19.)  If anything, an employer who properly withholds taxes is entitled to even greater protection under the statute than an employer who withholds the wrong amount.  (See id. (citing cases).)  Plaintiffs' only retort is that the statutory language controls.  (Simon Opp. at 6.)  But Section 7422 unequivocally applies to suits seeking to "recover" any tax that was "excessive," which necessarily encompasses the taxes improperly assessed against the residents who were eligible for the student exception.  26 U.S.C. § 7422(a). And, even if the statute were ambiguous, "a construction of a statute leading to unjust or absurd consequences should be avoided."  Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 386 (2d Cir. 2004) (citation omitted) (internal quotation marks omitted).

    **C.**    **Declining to Apply Section 7422 To Preempt This Suit**
            **Would Thwart Public Policy Set Forth By Congress**

Plaintiffs ask this Court to become the first court *ever* to exempt an untimely tax refund suit against an employer from Section 7422's expansive prohibition against *any* suits against private tax collectors for the recovery of "any sum" alleged to be "excessive."  26 U.S.C. § 7422. Such a result would flout controlling precedent, trigger employee claims any time the IRS retroactively permitted refund claims, require employers to alert employees to even remote refund opportunities and expose employers to massive new private liabilities arising out of their legal obligation to collect taxes – all consequences Congress explicitly preempted.[8]

---

[8]    Plaintiffs lean mightily on a single inapposite out-of-district case (Davidson), where the plaintiff never had any basis to seek a refund from the IRS and instead sued his ERISA administrator and fiduciary for failing to comply with the special timing rule for withholding.  In Davidson, the defendant, as a fiduciary to the plaintiff in its role as administrator of his ERISA plan, had "discretionary control over participants' funds and their tax treatment," and was "authorized and obligated . . . to properly manage the tax withholding from Plaintiff's benefits."  2013 WL 3863981, at *8.  The defendant failed to follow the "special timing rule," under which "Plaintiff would have owed no additional FICA taxes in 2003 or in any subsequent year."  Id. at *1-2.  It bears emphasis that the plaintiff *was admittedly never entitled to a refund from the IRS* because the taxes were properly owed based on the elections made.  Id. at *4.  Moreover, unlike here, the defendant's alleged liability arose from its abuse of its discretion as an

                                                                *(cont'd)*

By contrast, contrary to Plaintiffs' suggestion, enforcement of Section 7422 preemption would not immunize any "tax preparer." (Childers Opp. at 15.) "Tax preparers" do not act as agents of the U.S. Treasury; they are paid agents of the taxpayer and have independent duties as paid agents. (Childers Opp. at 15); see also Blumberg v. Altman, 15 Misc. 3d 1140(A), 2007 N.Y. Slip Op. 51060(U), at 1 (N.Y. Sup. Ct. 2007) (malpractice claim against tax preparer "engaged to prepare . . . returns on the taxpayer's behalf.").

Contrary to the Simon Plaintiffs' assertion (Simon Opp. at 10-12), the oft-cited policies that undergird Section 7422 preemption (Mem. at 13-15) manifestly compel preemption here. First, the policy against "whipsawing" employers who are required to collect and remit taxes by subjecting them to refund suits is directly applicable here, as the Hospital would be exposed to untimely claims for refunds it cannot recover from the government. (See supra §I.A.) Second, the policy of allowing the IRS to investigate and resolve tax disputes by obligating taxpayers first to bring administrative claims against the IRS for tax refunds also mandates dismissal. See 26. U.S.C. § 7422(f)(1); Mills v. MA.B.S.T.O.A., No. 87-civ-8497 (LBS), 1988 WL 132848, at *2 (S.D.N.Y. Dec. 8, 1988). As the Court in DuPont Glore observed:

> If the government is not made a party to a suit against a collecting agent . . . the Court would be forced to adjudicate potentially complicated tax questions, perhaps of some public importance, in a litigation between private parties, without the benefit of the participation of the Internal Revenue Service. The government, of course, has a vital interest not only in collecting taxes that are due but also in assuring that refunds are made only to those entitled to them. To permit private litigation for the recovery of tax refunds may defeat that purpose.

_____

*(cont'd from previous page)*
ERISA plan administrator to minimize the plaintiff's tax liability – rather than (as here) collection of taxes as an agent for the IRS. Id. at *9. Indeed, an **even more recent case** from a district court in the Sixth Circuit dismissed a suit asserting state-law claims against an employer for the refund of FICA taxes alleged to have been "excessive," finding that it was an artfully-pleaded tax refund suit. Berera v. MESA Medical Group, PLLC, No. 5:13-cv-294-JMH, 2014 WL 29386, at *1 (E.D. Kent. Jan. 3, 2014) (citing Mikulski, 501 F.3d at 560).

428 F. Supp. at 1303-04.  Here, Plaintiffs failed to bring any timely administrative claims and the IRS has already held new claims by medical residents after 2010 seeking a refund are time-barred.  (See Grinalds MTD Decl. Ex. 6, at 5; see also Childers Compl. ¶ 38; Simon Compl. ¶ 41.)  Permitting this back-door and untimely refund suit subverts the Government's "vital interest" in ensuring that "refunds are made only to those entitled to them." DuPont Glore, 428 F.Supp. at 1304.  Plaintiffs also ignore the complicated tax issues this Court would be required to adjudicate in a private tax suit to which the IRS is not a party – including grappling with the FICA tax credit Plaintiffs have received.  For example, only the IRS can determine the correct amount of any FICA refunds to which residents may once have been entitled (for instance, taking into account any individual offsets).  These are not merely "damages" issues, (see Simon Opp. at 11 n.4), but precisely why Congress mandated that suits against the United States were Plaintiffs' *exclusive* remedy for a refund.  26. U.S.C. § 7422.

Last, Plaintiffs' claims contravene the strong policy to ensure timely refund claims.  By suing the tax collector, Plaintiffs seek to circumvent the tax code's timely filing requirements the IRS has an interest in enforcing.  See DuPont Glore, 428 F. Supp. at 1306 (one purpose of § 7422 is to prevent taxpayer from suing "the collecting agent after the statute of limitations for filing refund claims with the government has expired").  Had the statute of limitations not expired, Plaintiffs admit they could have simply filed refund claims.  (Childers Compl. ¶ 7.)

## II. THE COMPLAINTS FAIL TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Standard of Review and Appropriateness of Dismissal

Of course, the Court need not accept as true Plaintiffs' "bald contentions, unsupported characterizations, and legal conclusions" in the Complaints relating to the existence of a fiduciary duty.  Gavish v. Revlon, Inc., No. 00 Civ. 7291(SHS), 2004 WL 2210269, at *10

(S.D.N.Y. Sep. 30, 2004).  Plaintiffs also erroneously contend the Court cannot dismiss a claim

for breach of fiduciary duty as a matter of law.  (Simon Opp. at 25.)  This Court has repeatedly

dismissed breach of fiduciary duty claims where, as here, no facts are alleged to show a

cognizable duty exists.  See, e.g., Faktor v. Yahoo! Inc., No. 12 CIV. 5220 (RA), 2013 WL

1641180, at *3 (S.D.N.Y. Apr. 16, 2013) (dismissing breach of fiduciary duty claim); Granat v.

Ctr. Art Galleries—Hawaii Inc., No. 91 CIV. 7252 (RLC), 1993 WL 403977, at *8 (S.D.N.Y.

Oct. 6, 1993) (same).  Plaintiffs' cases too recognize courts can determine there is no fiduciary

duty at the pleading stage.  See Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553,

561-62 (2009) (affirming dismissal of Plaintiff's breach of fiduciary duty claim); Abercrombie v.

Andrew Coll., 438 F. Supp. 2d 243, 275 (S.D.N.Y. 2006) (dismissing breach of fiduciary duty

claim because relationship between *alumnae* and *alma mater* is not fiduciary).[9]

Finally, even though they accuse the Hospital of fraud (Childers Opp. at 23-27, 33-34;

Simon Opp. at 29-32), Plaintiffs fail to acknowledge, much less meet, the heightened pleading

standards of Rule 9(b), Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006), including

the duty to plead facts that give rise to a strong inference of fraudulent intent, S.Q.K.F.C., Inc. v.

Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996).

---

[9]    Plaintiff's cases are readily distinguishable.  Salomon Bros. v. Huitong Int'l Trust & Inv. Corp., No. 94 Civ.
8559 (LAP), 1996 WL 675795 (S.D.N.Y. Nov. 21, 1996) and Lumbermens Mut. Cas. Co. v. Franey Muha Alliant
Ins. Servs., 388 F. Supp. 2d 292 (S.D.N.Y. 2005) both involved specific allegations of a principal-agent relationship
between a broker and the broker's customer.  In Plaintiffs' other cases, the defendant affirmatively undertook a duty
or made affirmative representations that gave rise to a fiduciary relationship.  Scott v. Dime Sav. Bank of N.Y., 886
F. Supp. 1073, 1078 (S.D.N.Y. 1995) (Defendant "encouraged [Plaintiffs] to borrow $100,000" and "induced
[Plaintiffs] to invest a substantial part of that money"), aff'd, 101 F.3d 107 (2d Cir. 1996); Dresses for Less, Inc. v.
CIT Grp./Commercial Servs., Inc., No. 01 CIV. 2669 (WHP), 2002 WL 31164482, at *16 (S.D.N.Y. Sept. 30, 2002)
("[Defendant] breached a fiduciary duty when it advised [Plaintiff] that it would continue to extend him credit and
failed to do so.").  Plaintiffs plead no such affirmative acts or representations by the Hospital to dissuade residents
from filing for tax refunds or induce them to rely on the Hospital to do so for them.

**B.**     **The Breach of Fiduciary Duty Claims Fail**

     **1.**     **The Hospital Was Not A Fiduciary With Respect To Plaintiffs' Taxes**

The Hospital has shown that under New York law an employer-employee relationship does not give rise to a fiduciary duty and Plaintiffs have failed to plead any facts to support a duty to give Plaintiffs tax advice or alert them to a theoretical refund opportunity.  (See Mem. 20-23); see also Wilson v. Dantas, No. 12 Civ. 3238 (GBD), 2013 WL 92999, at *4 (S.D.N.Y. Jan. 7, 2013); see also Childers Opp. at 19.  Plaintiffs do not dispute that an employer-employee relationship by itself does not give rise to a fiduciary duty.  (See Childers Opp. at 19.)

Unable to cite a single case holding an employer has a fiduciary duty to file FICA tax refund claims on behalf of its employees (when it elects not to file on its own) or provide any tax-related advice to employees, Plaintiffs concede they are asking the Court to create new law recognizing this new purported fiduciary duty.  (See Simon Br. at 20 (declaring that fiduciary relationships are not limited to "those the law has long adopted").)  None of Plaintiffs' arguments in support of their request that the Court create this unprecedented legal duty has merit.

     (a)     Whether residents were employees or students, there was no
             fiduciary duty

Childers Plaintiffs' assertion that "the whole foundation of this lawsuit is that residents were students, not employees" is both disingenuous and immaterial.  The Childers complaint *repeatedly* describes the relationship here as that of employer-employee.  (See, e.g., Childers Compl. ¶¶ 16, 40.)  As the Complaints show, *the Hospital* is not a university or medical school.  Rather, it employed medical residents enrolled in the Weill Cornell Residency Program.  (See Childers Compl. ¶¶ 12-14; Simon Compl. ¶¶ 8-12.)[10]  There is no fiduciary relationship between

---

[10]     During the class period, the IRS consistently took the position that residents were employees, not students, which many courts endorsed. (Childers Compl. ¶ 23; see also Mem. at 6.)  The IRS did not treat medical residents as students until 2010, when it did so retroactively, and the 2004 Treasury Regulation that went into effect in 2005

                                                             *(cont'd)*

teaching hospitals and medical residents.  See, e.g., Ryan v. Univ. of N.C. Hosps., 609 S.E.2d 498 (N.C. Ct. App. 2005); (Childers Opp. at 19 n.18).

Moreover, educational institutions are not fiduciaries to students under New York law. See Doe v. Holy See (State of Vatican City), 17 A.D.2d 793, 795-96 (3d Dept 2005) (no fiduciary relationship between "religious educational institutions" and students); Austin v. Albany Law Sch. of Union Univ., 38 Misc. 3d 988, 1000 (Sup. Ct. Albany County 2013) (no fiduciary relationship between school and students).  Plaintiffs cannot cite a single case holding that an educational institution, teaching hospital or employer owes students, medical residents or employees any general fiduciary duties with respect to their tax liabilities.

Plaintiffs' assertion that the medical residents were "overworked," "underpaid" and had a limited ability to pick their residency program does not elevate the relationship here to a fiduciary one.  (Childers Opp. 18-19.)  First, these new allegations do not appear in the Complaints and should be disregarded.  See Olde Monmouth Stock Transfer Co. v. Depository Trust & Cleaning Corp., 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007).  Moreover, Plaintiffs fail to cite *any* authority supporting their novel theory that an employee's working conditions bear on an employer's duties with respect to tax refunds.  The characteristics that Childers Plaintiffs describe are common to all residency programs, and courts have recognized medical residency programs are not subject to any special heightened duties.  See Ryan, 2005 WL 465554, at *4; Golek v. Saint Mary's Hosp., Inc., 34 A.3d 452 (Conn. App. Ct. 2012).[11]

_____

*(cont'd from previous page)*

classifies medical residents as *employees*, not students.  See Student FICA Exception, 69 Fed. Reg. 8604-01, 8605 (Feb. 25, 2004) (to be codified at 26 C.F.R. pt. 31); Treas. Reg. §31.3121(b)(10)-2(d)(3)(i); Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704 (2011) (upholding regulation).  Thus, Plaintiffs cannot avoid the employer/employee cases the Hospital cites by claiming residents were always students, not employees.

[11]   Plaintiffs' cases are completely inapposite.  In Deleu, the plaintiff worked as defendant's personal servant for six years, and alleged that defendant failed to withhold any taxes (as required by law) and *advised plaintiff that he need not pay taxes at all*.  Deleu v. Scaife, 775 F. Supp. 712, 714 (S.D.N.Y. 1991).  Here, Plaintiffs cannot allege the
*(cont'd)*

Simon Plaintiffs' claim that "according to the IRS, the employer acts as a fiduciary in certain contexts when it handles refunds for employees' FICA taxes, for example, in ***bringing*** a refund claim on behalf of consenting employees" (Simon Opp. at 16) only addresses the inapposite situation where an employer has filed refund claims – which the Hospital did not do here.[12]  Plaintiffs do not and cannot provide any authority holding that employers have any duty to file a refund claim on behalf of themselves ***in the first instance***, much less when such claims were being denied by the IRS.[13]  The limited duty Plaintiffs' authorities recognize arises only where, unlike here, an employer has decided to file a claim and is charged with properly

_____

*(cont'd from previous page)*

Hospital failed to withhold or ever advised them not to pay taxes or file for refunds or made any statement that it was filing refunds on their behalf.  Equally inapposite is USA United Holdings, Inc. v. Tse-Peo, Inc., 23 Misc. 3d 1114(A) (table), 2009 WL 1099462 (Sup. Ct. Kings County 2009), which involved a contractual dispute between a bus company and an outside payroll agent, where the agent breached its contract to "deduct and remit to the proper taxing authorities all . . . taxes and forms that employers" were required to submit.  Id. at *1, 10.

[12]    Indeed, the applicable Treasury Regulations (see Treas. Reg. § 31.6402(a)-(2)(a); Mem. at 6 n.3), which Plaintiffs both ignore, permit "any person" to file for a refund, and only permit (but do not require) an employer to file for a refund of employee taxes if it has reimbursed the employee or obtained their consent (***neither*** of which is alleged here) and included a claim for the employee.  In the IRS Chief Counsel Advice dated February, 2013, admittedly quoted (without attribution) in paragraph 39 of the Simon Complaint, the IRS opined that hospitals that actually brought refund claims assumed the role of fiduciary as to those claims because "the refund is actually paid to the employer, who is then supposed to give the entitled employees their share."  Chief Counsel Advisory, I.R.S. C.C.A. 201307006, 2013 WL 582463 (June 21, 2012) (the "CCA").  But the CCA also recognized that "a hospital/employer ***may have***" (i.e., not ***must*** have) "filed a claim for refund of overpaid FICA tax for both its (employer) share and on behalf of consenting medical resident employees, for their share."  Id.  Contrary to Simon Plaintiffs' protest (Simon Opp. at 16 n.6.), the CCA may be considered in full and the quoted portion need not "be taken as true at this stage" merely because it "is contained in the complaint."  See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991).  Moreover, the CCA on its face is nonbinding and nonprecedential.  Bartak v. Comm'r, 87 T.C.M. (CCH) 1152, 2004 WL 565455, at *9 (2004) ("Parties are statutorily proscribed from citing chief counsel advice as precedent.") aff'd, 158 F. App'x 43 (9th Cir. 2005); 26 U.S.C. § 6110(k)(3).

[13]    In Atlantic Department Stores, Inc. v. United States, 557 F.2d 957 (2d Cir. 1977), the Second Circuit reversed the district court's decision that "the IRC and the applicable regulations did not impose upon the employer the obligation to claim a refund or credit on behalf of its employees ***as a precondition to securing a credit for its own overpayment***."  Id.  Here, Plaintiffs allege the Hospital never sought to obtain a refund, and thus there was no "precondition" to also do so on behalf of the residents.  See also Macy's N.Y., Inc. v. United States, 484 F. Supp. 181, 182 (S.D.N.Y. 1980).  Likewise, Mills v. United States, 890 F.2d 1133, 1136 (11th Cir. 1989), merely held that the "duty on the employer to act on both its own and its employee's behalf" only arises if the employer undertakes to file on its own behalf.  Id. at 1136.  Plaintiffs also cite United States v. Stevens, 211 F.3d 1 (2d Cir. 2000), to claim that "[a]n employer's fiduciary responsibilities to its employees include 'federal payroll withholding and reporting.'" (Simon Opp. at 15.)  But this language is from the ***factual background*** section of the opinion describing the responsibilities a temporary staffing agency ***contractually*** agreed to assume for its client companies as their fiduciary.  Stevens, 211 F.3d at 2.  It was not a legal holding at all.

14

remitting the employees' portion of any FICA tax refund.  Plaintiffs' attempt to stretch this

limited duty into a general obligation to always file refund claims lacks any support,[14] and would

impose on employers sweeping new duties nowhere envisioned by the Internal Revenue Code.[15]

> (b)  The unilateral reposal of trust and confidence is insufficient to
>       create a fiduciary relationship

Next, Plaintiffs claim the Hospital was a fiduciary because residents supposedly reposed

their trust and confidence in the Hospital to file FICA refund claims or advise them to file their

own.  (See Simon Opp. at 13, 17, 18.)  This ignores that a party may not create a fiduciary

relationship by unilaterally reposing trust and confidence in another; that trust and confidence

must be accepted as well.  Faktor, 2013 WL 1641180, at *3 (granting defendants' motion to

dismiss breach of fiduciary duty claim because "[m]ere reposal of one's trust or confidence in a

party, however, does not automatically create a fiduciary relationship; *the trust or confidence*

*must be accepted as well*.") (citations omitted) (internal quotation marks omitted); Musalli

Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 26 (S.D.N.Y.

2009), aff'd, 382 F. App'x 107 (2d Cir. 2010) (same) (citation and internal quotation marks

omitted).[16]  Here, even if the "unwitting" residents trusted the Hospital to file protective claims

---

[14]   Nor does the nonprecedential Rev. Rul. 2009-39, 2009-52 I.R.B. 951, plaintiffs cite (Simon Opp. at 16) create any duty to file refund claims.  As with Plaintiffs' other citations, it only pertains to situations *if and when* an employer actually *does* file a refund claim and nowhere suggests employers have any duty to file refund claims in the first place.  Plaintiffs ignore the sentence immediately preceding the language they selectively quote, which states that "Section 31.6402(a)-2 provides rules under which a refund claim for an overpayment of FICA tax *may* be made."  Rev. Rul. 2009-39.

[15]   Plaintiffs tautologically claim that the Hospital's decision to file FICA refund claims for itself at different locations (which simultaneously required employee claims) "implies that it recognized some duty to act on the residents' behalf."  (Simon Opp. at 19.)  That the Hospital voluntarily filed for certain locations does not mean it was under any duty to do so for all locations.

[16]   Even Plaintiffs' inapposite cases cited for the proposition that reposal of trust can give rise to a fiduciary duty recognize that that trust must be accepted as well.  See Lavin v. Kaufman, Greenhut, Lebowitz & Forman, 226 A.D.2d 107, 108 (1st Dep't 1996) (accountant undertook to provide accounting services to plaintiff and presented financial suggestions which plaintiff "routinely signed"); Rose v. Simms, No. 95 Civ. 1466, 1995 WL 702307, at *1 (S.D.N.Y. Nov. 29, 1995) (contractor "made a number of representations with regard to the services [its subsidiary] would provide once hired," including that the subsidiary "would owe [plaintiff] a fiduciary duty," and "signed an

*(cont'd)*

15

(despite their professed ignorance of the availability of such claims (see Simon Opp. at 15)), there are no allegations that the Hospital ever *accepted* that position of trust.[17]

At most, the Complaints allege that the Hospital undertook a duty to provide medical training to its residents.  However, Plaintiffs' own cases hold that a fiduciary relationship exists where one party is "under a duty *to act or give advice* for the benefit of the other upon matters *within the scope of the relationship*."  St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010) (professor owed various fiduciary duties based on agreement to assign inventions to university); see also Simon Opp. at 14.  Plaintiffs identify no legal or other duty to file refund claims or provide tax advice, no basis for such a duty to arise out of the obligation to provide medical training, nor a *single statement or action* during the class period by the Hospital suggesting it was filing refund claims on their behalf.[18]  Cf. Treas. Reg. § 31.6402(a)-(2)(a); n. 13, supra (employer must pay or notify employees before filing refund claims for them); (Childers Opp. at 11 (describing written notices other hospitals provided to residents).)

_____

*(cont'd from previous page)*

agency agreement"); Burdett v. Miller, 957 F.2d 1375, 1381 (7th Cir. 1992) ("If a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and *accepts the offer* and reposes complete trust in him, a fiduciary relation is established.").

[17]   Plaintiffs' argument that the residents' "ongoing conduct" shows they reposed trust and confidence during the class period is unavailing.  (See Simon Opp. at 18-19.)  First, Plaintiffs fail to explain how they could have been reposing trust and confidence in the Hospital to file their FICA refund claims when they claim they knew nothing about the issue.  (See id. at 15.)  Second, this argument ignores that the Hospital never *accepted* that alleged trust and confidence, which Plaintiffs concede is a critical element of a fiduciary duty claim.  (Id. at 14.)  Third, Plaintiffs cannot cite a single representation by the Hospital soliciting or accepting Plaintiffs' trust to file refund claims, or dissuading them from filing their own.  The sole communication Plaintiffs cite occurred *after 2010*, when claims were time-barred.  (Compare Childers Opp. at 11 (citing notices by other hospitals to residents).)

[18]   Plaintiffs' attempts to charge the Hospital with the disclosure duties of "an ERISA fiduciary" are misguided. (Simon Opp. at 19-20.)  Plaintiffs' own cases show these duties are *imposed by ERISA* – a statute that has no application here.  E.g., Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88 (2d Cir. 2001) ("[R]egarding *fiduciary duty claims under ERISA* §§ 404(a)(1)(A) & (B), [a] fiduciary must discharge his duties solely in the interests of the participants . . ."); Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) ("*As an ERISA fiduciary*, the Fund may be held directly liable *under §§ 404(a) and 502(a)(3)(B)* for a failure to provide complete and accurate material information to its beneficiaries.").  Nor can the Hospital possibly be likened to a class representative with notice obligations to a class under Fed. R. Civ. P. 23.  (Simon Opp. at 22.)

16

Plaintiffs also argue that they "were misled by NYP into believing that [the Hospital] had filed refund claims on their behalf" during the Class Period because the Hospital's FAQ website, first published in 2013, "stated that the IRS accepted its FICA Refund Claims 'for all years filed by the Hospital.'"  (Simon Opp. at 31 (quoting Grinalds MTD Decl. Ex. 7, at 2).)  But this same website **_explicitly listed_** the years and residency programs for which the Hospital did **_and did not_** file refund claims.  (Grinalds MTD Decl. Ex. 7, at 5.)  No honest reading of the Hospital's 2013 FAQs could have "misled" Plaintiffs into thinking the Hospital had filed refund claims for them during the class period.  Indeed, **_it was this very FAQ website_** that Plaintiffs claim alerted them that the Hospital had **_not_** filed refund claims for these years.  (Simon Opp. at 4 ("In 2013, Defendant disclosed for the first time that it had agreed to refrain from filing protective claims on Plaintiffs' behalf .").)  Plaintiffs' claim that this same FAQ misled them is frivolous.

Nor do Plaintiffs allege or explain how filing tax returns or providing tax advice was "within the scope of the relation" between a teaching hospital and medical school graduates.  The Hospital was not a tax advisor and never held itself out to be one.[19]  Cf. Ross v. FSG PrivatAir, Inc., No. 03-Civ-7292 (NRB), 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 16, 2004) ("PrivatAir is not a law firm.  Plaintiff cites no authority which supports holding a non-lawyer to a special standard of care for conduct that is the province of attorneys.").  Plaintiffs are not "entitled" to speculative discovery to search for statements supporting a fiduciary relationship when they cannot allege any now to state a claim.  (Simon Opp. at 25; Mem. at 10 n.9.)[20]

---

[19]    Plaintiffs now attempt to abandon their claim that the Hospital had a duty to provide tax advice – obviously recognizing no such duty actually exists.  (See Simon Opp. at 19; Childers Opp. at 2.)  But this is precisely the duty they want this Court to impose.  (See Simon Compl. ¶¶ 62, 68, 70, 73 (alleging ineligibility for refund was result of the Hospital's failure "to advise her that she should file such a claim herself."); Childers Compl. ¶¶ 7, 8, 37.)

[20]    Plaintiffs mistakenly rely on Johnson v. Schmitz, 119 F. Supp. 2d 90 (D. Conn. 2000) (Simon Opp. at 25), to suggest that a **_university's_** representations it provided a nurturing environment to students might bear on the existence of a fiduciary duty.  First, the Hospital was not a college or university.  Second, the plaintiff in Johnson was a graduate student who sued Yale and his dissertation advisors for misappropriating a theory that he had

*(cont'd)*

17

The Hospital also was not Plaintiffs' "agent" on any matter, let alone tax matters. (Simon Opp. at 15.) As <u>Travis</u> makes clear, an employer is the ***government's*** agent – not its employees' agent – for purposes of collecting and remitting FICA taxes, and to the extent an employer owes any fiduciary duties, it owes them to the government.[21] <u>See</u> No. CIV 00-393-HU, 2000 WL 1853084, at *5-6 (D. Or. Dec. 13, 2000); <u>DuPont Glore</u>, 428 F. Supp. at 1306 ("In so collecting the tax and paying it over to the government the defendants act merely as agents for the United States."); <u>see also</u> <u>Kaucky</u>, 109 F.3d at 351 ("When Congress makes a private firm the Internal Revenue Service's 'collection agent' . . . the firm corresponds to an employee of the Service.").[22]

> (c) <u>Relative sophistication or superior knowledge do not create a fiduciary relationship here</u>

Plaintiffs' "superior knowledge" argument boils down to the contention that the Hospital was purportedly paying closer attention to the medical resident FICA issue than the individual residents were. (Childers Opp. at 19 (arguing the Hospital was "advised by very knowledgeable lawyers and accountants"); Simon Opp. at 14 ("NYP had superior knowledge and information to Plaintiffs concerning the 'student exception.'").)[23] This argument fails for several reasons.

_____

*(cont'd from previous page)*

developed – essentially stealing the work that was the core of his graduate course of study – in violation of Yale's express "represent[ation] that it would safeguard its students from faculty misconduct." <u>Johnson</u>, 119 F. Supp. 2d at 98. Here, by contrast, Plaintiffs do not allege ***any*** representation by the Hospital to the residents relating to FICA taxes, or that FICA tax refunds during the class period.

[21] Plaintiffs attempt to minimize the <u>Travis</u> case by seizing on the court's statement that the FICA withholding laws do not, "standing alone," create a fiduciary relationship. (Simon Opp. at 24.) Plaintiffs ignore the court's clear pronouncement that "the special relationship created by [the FICA statutes], if any, is between the government and the employer, not the employer and the employee. When the employer stands in place of the government as tax collector, it is not acting to further the employee's economic interests." <u>Travis</u>, 2000 WL 1853084, at *5.

[22] Childers Plaintiffs' reliance on <u>United States v. Allen</u>, No. 1:91CV0244, 1992 WL 437652 (N.D. Ohio Nov. 24, 1992), noting "concern on the part of the courts that employers will profit from erroneously withholding FICA tax from the wages of its employees then subsequently recovering refunds of the amounts withheld without informing, or repaying, the employees," is misplaced. <u>Id.</u> at *5 n.4. There, unlike here, the "defendant ***received a refund***" for the challenged FICA overpayments but made "no attempt" to "repay to the [employees] the amount of money to which they would have been entitled" absent an overpayment. <u>Id.</u> at *4.

[23] Plaintiffs are insouciant to the contradictions between their insistence this case is not based on a refund claim, (<u>see</u> §I.A, <u>supra</u>), and their efforts to manufacture a new fiduciary duty based on the Hospital's allegedly superior

*(cont'd)*

*First*, the information Plaintiffs allege the Hospital possessed pertaining to a possible refund opportunity (e.g., the Apfel decision) was public.  "While one party's superior knowledge of pertinent information sometimes creates a fiduciary relationship, 'a party's knowledge is not superior where the relevant information 'was either a matter of public record [or] was not pursued by the plaintiff[].'"  La. Mun. Police Emps.' Ret. Sys. v. JPMorgan Chase, No. 12 Civ. 6659(DLC), 2013 WL 3357173, at *15 (S.D.N.Y. Jul. 3, 2013) (citation omitted).  Plaintiffs only allege the residents had no "actual knowledge" of the student exemption; not that they could not have known (or ever attempted to educate themselves).  (See, e.g. Childers Opp. at 3, 19.)

*Second*, Courts require plaintiffs to allege additional facts beyond superior knowledge, such as prior business dealings, to show the plaintiff reasonably relied on the defendant's expertise.  See, e.g., Hutton v. Klabal, 726 F. Supp. 67, 73 (S.D.N.Y. 1989) (finding no fiduciary relationship based on superior knowledge because the complaint "does not allege prior dealings between [the two parties] which might create a relationship of trust and confidence"); Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985) (same).  Because there is no allegation the Hospital ever previously filed FICA refund claims for Plaintiffs or provided tax advice, there could be no reasonable expectation that it would do so during the class period.

*Third*, Childers Plaintiffs' allegation that the Hospital possessed "superior knowledge" of the Settlement Agreement is a red-herring.  It is of no moment ***why*** the Hospital decided not to file the FICA refund claims – as there was no duty to do so.  What matters is that the FICA student exemption issue was public knowledge based on court rulings and IRS regulations.

_____

*(cont'd from previous page)*
knowledge that residents were entitled to a FICA refund under the student exemption.  (Simon Opp. at 13, 14, 22, 23, 28.)  Indeed, Simon Plaintiffs even acknowledge that the salient knowledge the Hospital purportedly possessed was that the residents had "viable refund claims."  (Id. at 23.)

19

### 2.   Even if There Were a Duty, There Was No Breach Because the Residents At All Times Were Free To File Their Own Claims

Plaintiffs also cannot escape the fatal defect that they at all times could have filed their own protective claims.  See Treas. Reg. § 31.6402(a)-2(a); (b).[24]  Filing such a claim was only a matter of filling out an IRS form that was publicly available on its website.  (Mem. at 6.)  Plaintiffs admit this several times.  (Childers Opp. at 29 ("[D]efendant is correct that Plaintiffs were not prohibited from filing their own FICA claims . . ."); Simon Opp. at 21.)  Tellingly, Plaintiffs cannot contend that any provision of the 1999 Settlement Agreement (which Plaintiffs' counsel possess), which was solely between the Hospital and the IRS, barred any individual residents from filing their own FICA refund claims or compromised them in any way.

Childers Plaintiffs inconsistently maintain that the Court should ignore this fatal fact because "there is no evidence that had Plaintiffs filed their own claims that they would have received refunds."  (Childers Opp. at 21.)  This contradicts Plaintiffs' acknowledgement that class members who filed their own refund claims are excluded, and that some residents did file their own claims and receive refunds.[25]  (Childers Compl. ¶ 39.)  Plaintiffs' hypothesis that few residents filed refund claims is irrelevant – the point is that they could have if they wanted to.

### C.   The Childers Complaint Fails To State a Negligence Claim

Childers Plaintiffs' negligence claim fails because they cannot allege (1) the existence of any duty, *and* (2) that the Hospital's decision not to file FICA refund claims proximately caused their alleged losses.  (See Mem. at 26-27.)  Childers Plaintiffs' new theory that the Hospital

---

[24]   It is axiomatic that the Court can take judicial notice of the statutes and regulatory materials under which Plaintiffs could have filed their refund claims.  See United States v. Bradford, 160 F.2d 729, 731 (2d Cir. 1947).  Nor do Plaintiffs dispute that all taxpayers are deemed on notice of the tax code.  (See Mem. at 9 n.7.)

[25]   The Simon Plaintiffs' claim that Dr. Dantz somehow "qualif[ied] at random" for a refund for 1997 is disingenuous at best.  (Simon Opp. at 21 n.8.)  Obviously someone filed a refund claim for him, likely Dr. Dantz himself – he did not just randomly "qualify" for one.  Plaintiffs cannot claim that the residents were unable to protect their own interests when *one of the named plaintiffs* filed and received an individual refund.

assumed a duty by settling unrelated tax disputes between itself and the IRS is unavailing.  (See Childers Opp. at 21-23.)  There is no allegation that any resident was ever audited or threatened with higher tax liability in connection with the settlement, or that the residents were even a party to the Settlement Agreement, underscoring that their rights could not have been bargained away. Nor would the assumption of a duty concerning one aspect of residents' tax liability extend to all other tax matters.  See Abernathy-Thomas Eng'g Co. v. Pall Corp., 103 F. Supp. 2d 582, 608-09 (E.D.N.Y. 2000).[26]  Nor did the Hospital's conduct place plaintiffs in a more "vulnerable" position (a new legal test for which Plaintiffs provide no support), as the Settlement Agreement did not prejudice the residents' rights to file FICA refund claims.  (See supra § II.B.2.)

Finally, it is independently fatal that Plaintiffs do not and cannot allege proximate causation because they at all times could have filed their own refund claims – a point Plaintiffs do not even address.  (See Mem. at 27; supra § II.B.2.)

### D.     The Childers Complaint Fails to State a Fraud Claim

The Hospital established in its Memorandum of Law that Plaintiffs' fraud-by-omission claim is without merit because Plaintiffs do not plead the requisite special relationship or reasonable reliance because the Hospital had no duty to give Plaintiffs tax advice and Plaintiffs

---

[26]    Specifically, Childers Plaintiffs' own cases demonstrate that voluntary assumption of a duty does not extend duties beyond those assumed.  See Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (duty of care existed between bank and non-customers solely with respect to non-customers' use of bank's "lockbox" service); Wolf v. City of New York, 39 N.Y.2d 568, 573 (1976) (lieutenant firefighter who ordered volunteer firefighter onto roof assumed duty of care with respect to his safety while on roof); Parvi v. City of Kingston, 41 N.Y.2d 553 (1977) (police officers who voluntarily confined intoxicated person had duty not to leave person in more dangerous position); G. ex rel G. v. Athletic Alliance Risk Purchasing Grp., 193 Misc. 2d 190, 194 (Sup. Ct., Nassau County 2002) ("addressing question 'whether [defendant's] alleged statements, that there would be security patrols or guards and that it was unnecessary to lock the dormitory doors, constituted a voluntary undertaking to personally provide *such protection*'"); Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 522 (1980) (negligence claim can only survive if plaintiff can show that defendant "undertook to provide a *service* and did so negligently").

had access to all the information necessary to determine whether to file for a FICA refund claim. (See Mem. at 24-25.)  None of the arguments Childers Plaintiffs raise in response has any merit.

### 1.   There Was No "Special Relationship" And The "Special Facts Doctrine" Does Not Apply

Plaintiffs claim there was a "special relationship" "similar to a fiduciary relationship," (Childers Opp. 24), but as shown, there was no such "special" or fiduciary relationship between the Hospital and the residents, particularly with respect to tax matters. (See supra II.B.1.) Childers Plaintiffs next claim that under the "special facts doctrine," a "duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair."  (Childers Opp. at 25.)  This doctrine is inapposite because there was no "transaction" here between the Hospital and Plaintiffs and Plaintiffs had access to all the salient facts.  See, e.g., Beneficial Commercial Corp. v. Murray Glick Datsun, Inc., 601 F. Supp. 770, 774 (S.D.N.Y. 1985) (explaining that the duty to speak under the special facts doctrine only arises in "situations [where] plaintiff's reliance on defendant induced it to enter certain unfair transactions.").[27]  Here, the Hospital did not defraud the residents by inducing them to enter into any transaction with the Hospital without disclosing any special facts.

### 2.   Plaintiffs Also Do Not Allege Reasonable Reliance

While Childers Plaintiffs again cite their supposedly inferior knowledge of the FICA issue, they still fail to explain how this translates into any reasonable expectation that the

---

[27]   Plaintiffs' inapposite cases involve transactional counterparties engaged in commercial contractual transactions.  See, e.g., Gaines Serv. Leasing Corp. v. Carmel Plastic Corp., 105 Misc. 2d 694 (N.Y. Civ. Ct. Kings County 1980) (sale of a van), aff'd, 113 Misc. 2d 752 (N.Y. App. Term 1981); Donovan v. The Aeolian Co., 270 N.Y. 267 (N.Y. 1936) (sale of a piano); P.T. Bank Cent. Asia, N.Y. Branch v. ABN AMRO Bank N.V., 301 A.D.2d 373, 378 (1st Dep't 2003) (suit between counterparties to loan transaction); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 497 (S.D.N.Y. 2003); Heineman v. S & S Machinery Corp., 750 F. Supp. 1179, 1185-87 (E.D.N.Y. 1990) (purchase of shares in exchange for trademark rights); see also id. at 1183 ("Under New York law a person who induces another to enter into a contract by misrepresenting a material fact . . . may be held liable for damages in fraud.") (citation omitted).

Hospital would act on their behalf.  (Childers Opp. at 26.)  As discussed above, the Hospital was not a tax advisor and never held itself out as one, Plaintiffs' alleged reliance on a teaching hospital for personal tax advice was patently unreasonable, the FICA student exception issue and refund procedures were all public information, and Plaintiffs could have inquired (but did not) at any time into whether a timely refund claim had been filed on their behalf.  246 Sears Rd. Realty Corp. v. Exxon Mobil Corp., No. 09-CV-889 NGG JMA, 2012 WL 4174862, at *14 (E.D.N.Y. Sept. 18, 2012) ("A plaintiff cannot establish justifiable reliance or a duty to disclose where the information at issue was a matter of public record that could have been discovered through the exercise of ordinary diligence.").[28]  Childers Plaintiffs assert (without citation) that the Hospital "active[ly] conceal[ed]" the existence of the FICA issue and knew that residents would not file claims on their own (Childers Opp. 25-26), but do not explain how the Hospital could conceal public court decisions or IRS refund procedures or had any knowledge about how individual residents were handling their own tax filings.[29]  This alone forecloses the fraud claim.

### E.      The Childers Complaint Fails to State a Contract Claim

Childers Plaintiffs purportedly base their contract claim on the existence of an express contract and an implied contract.  Childers Plaintiffs, notably, have still failed even to identify these alleged contracts, let alone which terms were breached.[30]  (See Mem. at 27-28; Childers

---

[28]    In Atlantic Department Stores, the Second Circuit merely observed that *overwithholding* of FICA taxes would usually be the employer's fault (a premise inapplicable here), and thus the employer would be more likely to discover and remedy the overwithholding in such situations.  557 F.2d 957, 961 (2d Cir. 1977).

[29]    Childers Plaintiffs also assert that it is unreasonable for residents to be aware of their tax liabilities because they are "working over 80 hours per week."  (Childers Opp. 26.)  Not only should these new allegations be disregarded because they are not in the Childers Complaint, but Childers Plaintiffs provide no authority for the proposition that a taxpayer's hours or salary is at all relevant to their ability to understand their tax liabilities.  It also is disingenuous for Plaintiffs to suggest that highly educated medical school graduates at a prestigious postgraduate residency program were incapable of properly filing for tax refunds, consulting with an accountant or tax preparer (especially where Dr. Dantz apparently *did* file for a FICA tax refund for 1997), or inquiring of the Hospital.

[30]    Childers Plaintiffs inaccurately state the Hospital denied any contract with residents.  (Childers Opp. at 7 n.5.)  It did not; only that Plaintiffs' alleged no provision breached (which they still do not).  Childers Plaintiffs now claim
*(cont'd)*

Opp. 28-29.)  Significantly, Plaintiffs cannot identify any provision of the standard residency contract they belatedly submit to the Court (Barentzen Decl. Ex. E) that was breached or in any manner required the Hospital to file refund claims or provide tax advice.

Conceding that they cannot identify any breach of any express contract, Childers Plaintiffs instead turn to the implied covenant of good faith and fair dealing.  But this does not save their contract claim because the covenant of good faith and fair dealing cannot add new terms to a contract – it only requires that the parties act in good faith in carrying out their existing obligations under the contract.  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) ("The implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add [ ] to the contract a substantive provision not included by the parties.") (alteration in original) (citations omitted) (internal quotation marks omitted).  Here, since Plaintiffs do not allege any obligation under any express contract to file FICA refund claims or advise the residents to file such claims (because none existed), the covenant of good faith and fair dealing cannot impose such an obligation.

There is also no breach of any implied contract.  Even assuming, *arguendo*, that it is theoretically possible to imply a contract between a university and a student related to vastly different subjects (Childers Opp. at 28 n.20),[31] Childers Plaintiffs fail to explain what terms this supposed "implied contract" contains or how it relates to FICA taxes (or the provision of tax

---

*(cont'd from previous page)*

they do not have their "15 year old" contracts and cannot remember their terms.  (Id.)  They never explain how they could, in good faith, allege a breach of contract when they did not even know what their contracts said.

[31]     As their sole support for their contention that courts have implied contracts between students and an educational institution, Childers Plaintiffs quote from the ***dissent*** in Powers v. St. John's Univ. School of Law, 110 A.D.3d 888 (2d Dep't 2013), without alerting the Court that they are quoting from the ***dissent***.  Powers addressed whether a law school could rescind a student's admission after the student had attended the school for over a year and a half, and the majority held over the dissent that the school could do so without breaching any implied contract.  Id. at 890; see also id. at 900 (Miller, J., dissenting).

24

advice).  Childers Plaintiffs also do not point to any instance where an educational institution has

been found to have an implied contract with students relating to taxes.  In any event, as discussed

above, the Hospital is not "an institution of higher education" – it is a not-for-profit hospital that

"*employs* medical residents and fellows from both the Cornell Medical School and Columbia

Medical School."  (Childers Compl. ¶ 14.)  These vague allegations about the existence of some

amorphous implied contract cannot survive a motion to dismiss.

### F.    The Childers Complaint Fails To State A Claim For Constructive Fraud And Negligent Misrepresentation

Because the elements of a constructive fraud claim are "essentially identical" to a fraud

claim, (Childers Opp. at 29), the constructive fraud claim fails for same reasons the fraud claim

fails, including the failure to meet the heightened requirements of Rule 9(b).  Equally deficient is

the negligent misrepresentation claim because, as Plaintiffs concede, "[t]he cornerstone to a

negligent misrepresentation claim is a 'special relationship' between the parties."  (Childers Opp.

at 30.)  Here, as discussed supra § II.B.2, Plaintiffs have failed to allege "unique or special

expertise," "trust or confidence . . . between the parties," or that the Hospital "supplied"

information and "was aware of the use to which the information would be put."  (Childers Opp.

at 30 (citing Kimmell v. Schaefer, 89 N.Y.2d 257, 264 (1966)).)  Contrary to Childers Plaintiffs'

assertion, this is not automatically a fact specific inquiry.  See, e.g., Cohen v. Avanade, Inc., 874

F. Supp. 2d 315, 327 (S.D.N.Y. 2012) (dismissing negligent misrepresentation claim because

employee-employer relationship not a "special relationship" "as a matter of law").[32]

---

[32]    Childers Plaintiffs assert that the Court need not dismiss the negligent misrepresentation claim because it is "sparsely pled," selectively quoting from King County, Washington v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 306 (S.D.N.Y. 2012).  (Childers Opp. at 30.)  What the Court actually said in King County is that "[a]t the motion to dismiss stage, a sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation *where the complaint emphatically alleges the other two factors*," id. (citations omitted) (internal quotation marks omitted), required to plead such a claim – which are "unique or specialized expertise" and that the speaker "was aware of the use to which the information would be put and supplied it for that purpose." Id.

*(cont'd)*

### G.      Plaintiffs Have Not Pleaded That The Hospital Was Unjustly Enriched

To sustain a claim for unjust enrichment, a plaintiff must establish that: "(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant[ ] to make restitution." Intellectual Capital Partner v. Institutional Credit Partners LLC, No. 08 Civ. 10580(DC), 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009).  Plaintiffs' Oppositions confirm that none of these elements are met.

The first two elements are not met here because both plaintiffs have failed to identify any manner in which the Hospital was enriched at Plaintiffs' expense.  "[C]onclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 183 (2011) (citations omitted).  Plaintiffs cannot dispute that the Hospital lacked the capacity to unilaterally bargain away Plaintiffs' rights to obtain FICA tax returns, and the 1999 Settlement Agreement nowhere does so.  The Settlement Agreement (which Plaintiffs possessed when they filed their oppositions) reveals that the residents were not a party and the Hospital only agreed to forego its own FICA refund claims – it did not (and could not) "forfeit," trade away or bar residents' ability to file refund claims.  Plaintiffs concede that despite the Agreement, any resident who filed an individual claim within the limitations period would be entitled to a refund.  (See Childers Compl. ¶ 27; see also supra § II.B.2.)   Although Plaintiffs suggest the Hospital "effectively" impacted the residents' right to file for FICA refunds by entering into the Settlement Agreement, (Childers Opp. at 31), they elsewhere acknowledge that "[w]hat prevented Plaintiffs from filing

_____

*(cont'd from previous page)*
Here, Childers Plaintiffs do not allege any facts demonstrating specialized expertise or that the Hospital knew the residents were supposedly relying on any such FICA expertise.

their own refunds individually was ***their [purported] lack of information about the need to do***

***so***" (Simon Opp. at 28) – not the fact that the Hospital had entered into the IRS Settlement.[33]

Plaintiffs also fail to satisfy the third element of an unjust enrichment claim.  Plaintiffs

contend that the "essential inquiry" is "whether it is against equity and good conscience to permit

the defendant to retain what is sought to be recovered."  (Simon Opp. at 26-27.)  But equity and

good conscience militate against holding a private tax collector personally liable for tax refunds

that Plaintiffs could always have obtained themselves.  The Hospital did not "retain" anything

that rightfully belonged to Plaintiffs (it paid the taxes at issue over to the IRS), and only forfeited

its own rights.  Even if the Hospital could be deemed to be "enriched" by obtaining a settlement,

it did not do so at Plaintiffs' expense because their rights were never impaired.

## III.   ALL OF PLAINTIFFS' CLAIMS ARE TIME BARRED

### A.   Because The "Injury" Occurred As Early As 1999 And No Later Than 2005, The Claims Are Time-Barred

Plaintiffs' stale claims which date back to the late 1990s are time-barred.  The statute of

limitations began to run on the date of the alleged fiduciary duty breach, misrepresentation (for

negligent misrepresentation, fraud and constructive fraud), wrongful act for unjust enrichment

and contract breach.  (See Mem. at 30-32.)  All of these alleged breaches and misrepresentations

purportedly occurred when the Hospital entered into the 1999 Settlement Agreement.

Childers Plaintiffs attempt to circumvent the statute of limitations by asserting that their

claims only began to accrue after 2010.  However, Childers Plaintiffs ignore controlling law that

their claims run from the date of the breach or fraud (see Mem. 30-32), and cite inapposite cases

---

[33]   Simon Plaintiffs desperately request discovery to determine the extent to which the Hospital allegedly was enriched at Plaintiffs' expense.  (Simon Opp. 27.)  But, pursuant to the Court's Order, the Hospital produced the Settlement Agreement (which the Childers Plaintiffs have made use of as incorporated into the Complaints), which confirms it only prevented the Hospital from filing without any prejudice to residents.  (Barentzen Decl. Ex. A ¶ 7.) No amount of further discovery will show the Hospital benefitted at Plaintiffs' expense.

27

involving injury to property on a "negligence and/or strict products liability" theory, <u>Brooklyn Union Gas Co. v Hunter Turbo Corp.</u>, 241 A.D.2d 505, 506 (2d Dep't 1997) and "personal injuries," <u>Snyder v Town Insulation, Inc.</u>, 81 N.Y.2d 429, 432 (1993).  In any event, Plaintiffs' claim that they were injured only when the IRS began allowing refund claims contradicts their own allegations that they were injured when they lost their right to file a refund claim, which occurred, at the latest, in 2005.  (<u>See</u> Childers Compl. ¶ 7, Simon Compl. ¶ 47; <u>see also</u> Childers Opp. at 12 ("By the time the IRS made this announcement, it was ***too late for individuals or hospitals that had not already done so*** to file FICA claims because the statute of limitations had run.").)  Plaintiffs' claim that they would not have been able to sue the Hospital until the IRS started allowing claims in March 2010 merely proves this is a disguised tax refund suit.  Put differently, if this is ***not*** a refund suit and Plaintiffs are suing to redress some "separate injury," then the injury would occur without reference to when the taxes became refundable.

Plaintiffs are wrong that the statute of limitations defense cannot be decided on this motion.  <u>See</u> <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141 (2d Cir. 2012) (affirming dismissal on statute of limitations grounds); <u>W.W.E., Inc. v. Jakks Pac., Inc.</u>, 328 Fed.Appx. 695 (2d Cir. 2009) (same).  Plaintiffs' own cases dismiss claims where, as here, the face of the Complaint demonstrates the claim is untimely.  <u>See</u> <u>St. John's Univ., N.Y. v. Bolton</u>, 757 F. Supp. 2d 144, 185 (E.D.N.Y. 2010);[34] <u>accord</u> <u>Abbas v. Dixon</u>, 480 F.3d 636, 640 (2d Cir. 2007).[35]

---

[34]   <u>St. John's</u> is also distinguishable because the parties entered into an agreement where the plaintiff specifically "relinquished what little ability it already had to independently check" the information needed to discover the purported breach.  757 F. Supp. 2d at 167.  Here, Plaintiffs never relinquished their ability to determine whether refund claims had been filed on their behalf or their ability to discern their own tax liabilities.

[35]   Plaintiffs cite <u>Avila v. Lease Finance Group, LLC</u>, No. 11-Civ-8125(KBF), 2012 WL 3165408 (S.D.N.Y. July 31, 2012), for the proposition that the Court should not dismiss claims based on the statute of limitations unless plaintiff can show "no set of facts that would establish the timeliness of the claim." (Simon Opp. at 28.)  Not only does this case interpret California law, it applies the superseded pre-<u>Twombly/Iqbal</u> "no set of facts" standard.

**B.     Plaintiffs' Claims Are Not Saved By Equitable
Tolling Or The Two-Year Discovery Rule For Fraud**

In support of their equitable tolling theory, Plaintiffs misconstrue the operative "facts" that the Hospital supposedly concealed.  As discussed supra § II.B.1.(i), it is irrelevant whether the Hospital concealed the existence of the Settlement Agreement; what matters is whether the Hospital concealed that it had *not* filed protective claims.  Knowledge that the Hospital did not file refund claims is all Plaintiffs needed to bring the claims here, and there is not a single allegation that the Hospital ever concealed that information *or that any Plaintiff even inquired*.[36] See Koch v. Christie's, 699 F.3d at 157 ("Reasonable diligence is a prerequisite to the applicability of equitable tolling."); id. at 154 (two-year discovery rule for fraud requires reasonable diligence); State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988) (no tolling based on "self-concealing" wrong where "lack of diligence on [plaintiffs'] part" caused continued ignorance); Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265-66 (S.D.N.Y. 2006) (tolling requires showing that defendant "conducted himself in such an overt manner, after his wrongdoing, as to induce the plaintiff to delay commencement of her action on time or otherwise prevent her from doing so.") (emphasis in original) (citations omitted).

At best, Simon Plaintiffs cite a vague statement (admittedly made after 2010) in which the Hospital allegedly indicated that it had filed a protective claim for Dr. Dantz.  (Simon Compl. ¶ 57.)  Even if true, this cannot give rise to equitable tolling because by 2010 Dr. Dantz could no longer file a refund claim, and thus could not have detrimentally relied on the Hospital to do so.

---

[36]     Childers Plaintiffs contend that the Hospital would not have disclosed the settlement had the residents inquired. (Childers Opp. at 35.)  Even if true, this is beside the point – the question is whether the Hospital would have disclosed that it had not filed refund claims.  Plaintiffs allege no basis to conclude the Hospital would not have alerted them had they asked that simple question, or indeed that any Plaintiff *did* make such an inquiry.

As a last refuge, Plaintiffs insist that equitable tolling is a factual issue that cannot be decided on the motion to dismiss.  This is plainly incorrect.  (See Mem. at 31 (citing cases).)  Indeed, the Simon Plaintiffs are completely wrong in claiming dismissal is inappropriate "unless the complaint's own allegations foreclose the possibility that discovery could reveal facts that would entitle Plaintiffs to equitable tolling."  (Simon Opp. at 29, 34.)  Even their counterparts, the Childers Plaintiffs, recognize that "[a] *plaintiff* seeking an equitable tolling of the statute of limitations *must show*:  '(1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim.'"  (Childers Opp. at 34.)[37]

Finally, the Simon Plaintiffs argue for equitable tolling based on the supposed existence of a fiduciary relationship.  (Simon Opp. at 31-32.)  But as discussed above, there was no fiduciary relationship here, and even if there were, that relationship terminated when the residents left the Hospital's employ.  Plaintiffs manifestly have not satisfied their burden of alleging any basis for equitable tolling.[38]

## CONCLUSION

For the reasons discussed herein and in the Hospital's Motion to Dismiss, the Complaints should be dismissed in their entirety, with prejudice.

---

[37]   Plaintiffs' cases only support dismissal here.  In Long v. Frank, the Second Circuit held as a matter of law that equitable tolling was *inapplicable* to a plaintiff who alleged that he was misled by the EEOC in calculating how long he could bring his ADEA claim because he had "not demonstrated that he relied on the EEOC notice."  22 F.3d 54, 59 (2d Cir. 1994).  In Meriden International Bank Ltd. v. Government of the Republic of Liberia, which was decided under the more lenient pre-Iqbal/Twombly standard, the court acknowledged that equitable tolling is inappropriate where the party "should have acquired actual knowledge through the exercise of reasonable diligence," but held that it was a factual issue in that case because the then-current leaders of Liberia could not have known about the alleged bribery of the former regime until the former regime was deposed, facts bearing no resemblance to the instant action.  23 F. Supp. 2d 439, 446 (S.D.N.Y. 1998).

[38]   Simon Plaintiffs disingenuously argue that claims for FICA taxes from 1995 are not time-barred because "the Complaint nowhere alleges *when* in 1999 the settlement agreement was executed," (Simon Opp. at 34), even though they have a copy of the 1999 Settlement Agreement and know when it was executed.

Dated:  New York, New York
       January 10, 2014

Respectfully submitted,

  /s/  *Maura Barry Grinalds*
_____

Maura Barry Grinalds
Robert L. Dunn
Daniel W. J. Becker
Erin Simmons
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000
Email: maurabarry.grinalds@skadden.com
Email: robert.dunn@skadden.com
Email: daniel.becker@skadden.com
Email: erin.simmons@skadden.com

*Attorneys for Defendant The New York and Presbyterian Hospital*

31