UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                               :

DR. HENRY ERLE CHILDERS IV, ET AL.,   :
                            Plaintiffs,   :
                                               :     13 Civ. 5414 (LGS)

              -against-                :
                                               :

THE NEW YORK AND PRESBYTERIAN    :
HOSPITAL, ET AL.,                     :
                            Defendants,  :
                                             :
                                          X
----------------------------------------------------------------
                                               :

DR. LORI SIMON, ET AL.,             :
                            Plaintiffs,   :
                                               :     13 Civ. 5899 (LGS)

         -against-                :
                                           :

THE NEW YORK AND PRESBYTERIAN    :
HOSPITAL, ET AL.,                     :     **OPINION AND ORDER**
                            Defendants,   :
                                             :
----------------------------------------------------------------X

LORNA G. SCHOFIELD, United States District Judge:

      Before the Court is New York and Presbyterian Hospital's (the "Hospital") Motion to

Dismiss the complaints filed in two cases, which have been consolidated for pre-trial purposes.

Drs. Henry Earle Childers, IV and George Bino Rucker, on behalf of themselves and others

similarly situated (the "Childers Plaintiffs"), brought the first action against the Hospital for (1)

fraud; (2) constructive fraud; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5)

negligence; (6) breach of contract; and (7) unjust enrichment. Drs. Lori Simon, Bezalel Dantz,

Peter Hahn and Tracey Marks, on behalf of themselves and others similarly situated (the "Simon

Plaintiffs"), brought the second action against the Hospital for (1) breach of fiduciary duty and

(2) unjust enrichment.

The Hospital moves to dismiss both complaints in their entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, the Hospital's motion is denied as to all claims, except the breach of contract claim, which is dismissed.

I.      **Facts**

The facts are taken from the respective complaints filed in each action. The factual allegations in the complaints are substantively the same except as otherwise noted. As is required on this motion, the factual allegations contained in the complaints are assumed to be true.

   **A.  Parties**

The Hospital is a large not-for-profit institution that is the successor by merger of two former hospitals. The Hospital employs medical residents and fellows from both Cornell Medical School and Columbia Medical School. Plaintiffs in both actions were medical residents and fellows from Cornell Medical School in the Hospital's Weill Cornell Residency Program during all or part of the time period from 1995 through June 30, 2001.

   **B.  Background**

Under the Federal Insurance Contributions Act ("FICA"), both employers and employees must pay FICA taxes, which consist of contributions to Social Security and Medicare, on all wages paid to employees by the employer. Employers are obligated to withhold the employees' share of FICA taxes from the employees' paychecks and pay both the employees' and the employer's shares to the government. A statutory provision known as the "Student Exemption" exempts students employed by a college or university from FICA tax requirements.

Historically, the Internal Revenue Service ("IRS") interpreted the Student Exemption to exclude medical residents and fellows. Therefore, the IRS required all hospitals to withhold

FICA taxes from the paychecks of their residents and fellows. Beginning in the late 1990s, some medical schools and hospitals challenged the IRS, claiming that medical residents and fellows should be covered by the Student Exemption. These organizations stood to save millions of dollars on the employer portion of FICA taxes if the Student Exemption were to apply to residents and fellows.

While the challenges regarding the Student Exemption were underway, many medical schools and hospitals filed FICA refund claims with the IRS on behalf of themselves and their medical residents and fellows. For example, Mount Sinai Hospital/School of Medicine filed FICA refund claims on behalf of its medical residents beginning in 1995 and ending in 2005. The FICA refund claims filed by medical schools and hospitals were routinely denied by the IRS.

Nevertheless, these claims were considered "protective" because they tolled the statute of limitations and preserved the right to future FICA tax refunds should the IRS change its position on including medical residents and fellows under the Student Exemption. While medical residents and fellows could file individual protective FICA refund claims, they rarely did so, and the majority of individuals who did file were instructed to do so by their medical training institutions. The standard practice in the industry was that medical schools and hospitals would file protective refund claims to preserve the rights of both the institution and the individual residents and fellows.

In response to the denial of their FICA refund claims, many medical schools and hospitals filed suit. In 1998, the Eight Circuit Court of Appeals held that the Student Exemption applied to medical residents. *See State of Minn. v. Apfel*, 151 F.3d 742 (8th Cir. 1998). Despite this ruling, the IRS continued to require medical schools and hospitals to pay FICA taxes for their medical residents and fellows.

On April 1, 2005, the IRS issued new regulations regarding the Student Exemption, stating that any employee who works forty hours or more for a college or university is not eligible for the exemption.  Then, in 2008 and 2009, a series of decisions by the U.S. Courts of Appeals again held that medical residents were not categorically ineligible for the Student Exemption.  *See*, *e.g.*, *United States v. Mt. Sinai Med. Ctr. of Fla. Inc.*, 486 F.3d 1248 (11th Cir. 2007).  In 2010, in accordance with those rulings, the IRS agreed that medical residents and fellows were exempt from paying FICA taxes for tax periods before April 1, 2005.

The IRS then announced that medical schools and hospitals that had filed timely protective FICA refund claims could now apply for refunds of FICA taxes paid.  As a result, the IRS refunded FICA taxes, with interest, to those medical schools and hospitals that had timely filed protective FICA refund claims and then applied for refunds.  Those institutions then passed on the employee portions of those refunds to their medical residents and fellows.  For those medical residents and fellows for whom protective FICA refund claims had not been filed, however, it was too late to apply for a refund, as the statute of limitations had run.

### C.  Facts Specific to the Claims

When Plaintiffs worked for the Hospital as residents and fellows during the period from 1995 through June 30, 2001, the Hospital withheld FICA taxes from their paychecks and paid those amounts to the government.  The exact amounts withheld varied from person to person, but were generally several thousand dollars per year.

By the late 1990s, the Hospital was aware of the changing legal landscape regarding medical residents and fellows being covered by the Student Exemption.  The Hospital filed protective FICA refund claims starting in 1995 on behalf of its medical residents and fellows from Columbia Medical School and continued to do so every year (other than 1996) through 2005.  In contrast, the Hospital did not file protective FICA refund claims on behalf of its residents and fellows from Cornell Medical School until July 1, 2001 through 2005.

In 1999, the Hospital entered into a confidential settlement with the IRS that resolved an unrelated tax dispute (the "Settlement"). As part of the Settlement, the Hospital agreed to give up its right to seek refunds for both the employer and employee portions of all FICA taxes paid on behalf of its medical residents and fellows from Cornell Medical School through June 30, 2001. In exchange for giving up this right, the Hospital gained valuable consideration. The affected medical residents and fellows received no consideration.

The Hospital never sought or obtained consent from any Plaintiff before entering into the Settlement, nor did the Hospital notify any Plaintiff after entering into the Settlement. The Hospital also never notified Plaintiffs that they could file their own protective FICA refund claims. The Hospital knew that absent its own action to protect these claims, Plaintiffs would not do so because they knew nothing of the issue or the right to file a protective claim.

After the IRS's decision in 2010 that medical residents were exempt from FICA taxes for tax periods before April 1, 2005, some Plaintiffs contacted the Hospital seeking information about their entitlement to FICA refunds. For example, Dr. Dantz contacted the Hospital about his right to a FICA refund, and the Hospital informed Dr. Dantz that it would file for a refund on his behalf. The Hospital did not inform Dr. Dantz that it had failed to file a protective claim on his behalf and therefore he would not be eligible for a refund. Later, Dr. Dantz heard that his peers from other medical schools were receiving FICA refunds, and he contacted the Hospital again. This time, the Hospital informed Dr. Dantz that it had not filed a protective claim on his behalf.

Had Plaintiffs known of the Settlement in time, they would have filed individual protective FICA refund claims. By the time Plaintiffs did learn of the Settlement, however, the time to file FICA refund claims had already expired. Accordingly, no Plaintiff is eligible to receive FICA tax refunds for the time period from 1995 through June 30, 2001.

The Childers Plaintiffs filed their complaint against the Hospital on August 2, 2013, alleging fraud, constructive fraud, breach of fiduciary duty, negligent misrepresentation, negligence, breach of contract and unjust enrichment ("Childers Complaint"). The Simon Plaintiffs filed their complaint against the Hospital on August 21, 2013, alleging breach of fiduciary duty and unjust enrichment ("Simon Complaint"). On October 9, 2013, the two cases were consolidated for pre-trial purposes.

## II. Standard of Review – Motions to Dismiss

### A. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* However, all that a plaintiff must show at this stage is a "colorable pleading of subject matter jurisdiction." *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The Court must construe all ambiguities and draw all inferences in the plaintiff's favor. *See id.*

### B. Failure to State a Claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2).

### C. Statute of Limitations

"The statute of limitations is . . . an affirmative defense . . . on which the defendant has the burden of proof." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (internal citation omitted). Thus, on a motion to dismiss, a claim may be dismissed as time-barred "only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

"[P]leading requirements . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). "'Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact.'" *Bano*, 361 F.3d at 710 (quoting *Glod v. Morrill Press Div. of Engraph, Inc.*, 564 N.Y.S.2d 905, 908 (4th Dep't 1990)).

### III.  Discussion

#### A.  Subject Matter Jurisdiction

The Hospital argues that the Court lacks subject matter jurisdiction because the Internal Revenue Code (the "Code") bars any suit to recover a tax unless a timely refund claim has been made.  The Hospital further argues that it is an improper party because the Code permits tax refund suits only against the United States, and not against private parties.  These arguments are misplaced because these actions do not seek to recover a tax, but seek damages under state law as a result of the Hospital's tortious conduct.

The relevant statute, 26 U.S.C. § 7422, provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed . . .

26 U.S.C. § 7422(a) (1998).  "Duly filed" has been interpreted to mean timely filed.  *See Erdheim v. Comm'r.*, 661 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (citing *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 14-15 (2008)).  Federal courts therefore have held that where plaintiffs have not filed timely refund claims with the IRS, they do not have jurisdiction over suits for a tax refund.  *See, e.g.*, *id*; *Matthew v. RCN Corp.*, No. 12 Civ. 0185, 2012 WL 5834917, at *4 (S.D.N.Y. Nov. 14, 2012).

In addition, 26 U.S.C. § 7422 mandates that "[a] suit or proceeding referred to in subsection (a) may be maintained only against the United States."  26 U.S.C. § 7422 (f)(1) (1988).  Thus, courts have held that "tax refund suits can be brought only against the United States, not against employers."  *Mills v. Manhattan & Bronx Surface Transit Auth.,* No. 87 Civ. 8497, 1988 WL 132848, at *2 (S.D.N.Y. Dec. 8, 1988); *see also 'El Bey v. MTA/New York*, No. 00 CV 2504, 2001 WL 487410, at *2 (S.D.N.Y. May 8, 2001)

("An employer cannot be held liable for withholding taxes in compliance with federal law as the duty to withhold is mandatory, not discretionary.").

The Supreme Court has described 26 U.S.C. § 7422 as having an "expansive reach." *Clintwood Elkhorn Min. Co.*, 553 U.S. at 1. And "courts interpreting Section 7422 have construed its language broadly." *Matthew*, 2012 WL 5834917, at *4. Specifically, "courts have made clear that the statute applies to any tax refund suit, whether or not labeled as such and whether or not under federal law." *Id.* Therefore, courts have held that § 7422 preempts state law claims filed by plaintiffs where those claims sought tax refunds. *See*, *e.g.*, *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998) ("It is well established that the IRC [the Code] provides the exclusive remedy in tax refund suits and thus preempts state-law claims that seek tax refunds"); *Lehman v. USAIR Grp.* 930 F. Supp. 912, 916 (S.D.N.Y. 1996) ("The state law claims . . . are expressly pre-empted by § 7422 which prohibits such suits for disguised refunds of the taxes.").

The public policy reason behind limiting suits for tax refunds to those against the Government is to excuse the employer from liability when it is acting as the Government's collection agent, i.e., an intermediary between the taxpayer and the Government in the collection of taxes. Otherwise, the employer could be squeezed in the middle, with potential liability to the taxpayer without necessarily having recourse from the Government. *See Brennan*, 134 F.3d at 1411 (observing that employers "would be placed in the position of having to collect taxes at their peril" because they "would be required to refund taxes to the taxpayer but could not recover them from the government"); *see also Mills*, 1988 WL 132848, at *2 ("By withholding tax, [the employer] would risk being sued by the employee without recourse to a government refund in the event the limitation period had run; by not withholding, he would risk being held liable by the government.").

Here, § 7422 does not apply to Plaintiffs' claims because these are not suits for a tax refund. A corollary is that these actions do not arise out of the Hospital's collection of taxes, and therefore do not implicate the rationale for excusing the employer as tax collector from liability for tax refunds. The Hospital's alleged liability here stems not from its collection of FICA taxes but from later, independent actions and omissions, such as agreeing in the Settlement not to file protective refund claims on behalf of Plaintiffs, keeping the Settlement secret from Plaintiffs, not filing refund claims on behalf of Plaintiffs and not informing Plaintiffs that they should file refund claims for themselves. Of course, whether any of these actions and omissions actually occurred and whether they created liability for the Hospital are separate questions to be answered later.

The Hospital argues that the instant actions are disguised tax refund suits, citing cases. However, the instant actions are distinguishable from the cases cited by the Hospital, because in all of those cases, the defendants' alleged liability arose directly from their collection of the taxes at issue, while here, the Hospital's alleged liability does not. *Cf. Matthew*, 2012 WL 5834917, at *1, *5 (deeming state law claims to be for "disguised refunds of taxes" where the plaintiffs sued a telephone provider for allegedly collecting taxes on calls that were not taxable); *Umland v. PLANCO Fin.l Serv., Inc.*, 542 F.3d 59, 65, 67-68 (3d Cir. 2008) (holding that a claim was for a tax refund where the plaintiff alleged that her employer withheld its own portion of FICA taxes from her paychecks); *Brennan*, 134 F.3d at 1408, 1410, 1414 (holding that the suits were for tax refunds where passengers sued airlines under state laws based on their alleged collection of expired excise taxes); *Kaucky v. Sw. Airlines Co.*, 109 F.3d 349, 350-51, 353 (7th Cir. 1997) (same); *Lehman*, 930 F. Supp. at 915-16 (same).

Bringing state law claims simply to recover taxes paid may constitute an improper end-run around § 7422, but that is not what is happening here. Moreover, contrary to arguments

made by the Hospital, the stated purpose behind § 7422 of not allowing an independent tax collector, such as an employer, to be placed between a rock and a hard place does not apply here the way it did in the cases discussed above.[1] Plaintiffs do not seek to hold the Hospital liable for any action that the IRS required the Hospital to take, or that the Hospital reasonably could have believed it was required to take.

Instead, Plaintiffs seek to hold the Hospital liable for completely distinct allegedly unlawful conduct. The Hospital argues that it would be unfair to hold it liable when it could not be reimbursed by the IRS. However, if the Hospital did breach a duty to Plaintiffs—for example, by agreeing in the Settlement not to file protective refund claims on behalf of Plaintiffs—then there is no reason that the IRS should reimburse the Hospital for its independent wrongdoing.

It could also be argued that the Hospital already has been reimbursed by the IRS, as the Hospital bargained away its right to file FICA refunds on behalf of Plaintiffs allegedly in exchange for "valuable consideration." It is likely that when negotiating the Settlement, the IRS knew that the vast majority of affected medical residents and fellows would not file their own refund claims absent the Hospital's help and considered the value of these claims when bargaining with the Hospital. If so, the Hospital has already received value for those claims.

In *Mikulski*, shareholders brought suit against a corporation, alleging breach of contract and fraud based on the corporation's over reporting of taxable dividends to shareholders, which resulted in the shareholders' overpayment of income taxes. *Mikulski v. Centerior Energy Corp.*,

---

[1] The Hospital argues that it would be nonsensical for § 7422 to protect employers who improperly collect taxes but not employers who properly collect taxes. The Hospital further argues that it is therefore unnecessary to find that taxes were improperly collected in order for a suit for a tax refund to be preempted by § 7422. On this point, the Hospital is correct. "Instead of directing courts to characterize the nature of the tax collector—locating it on a spectrum from authorized agent acting in good faith, to once-authorized agent acting in bad faith, to con man . . . . § 7422 requires taxpayers to file claims with the IRS for tax refunds." *Umland*, 542 F.3d at 68 (internal citation omitted) (internal quotation marks omitted). However, here, the suits are not for a tax refund.

501 F.3d 555, 558 (6th Cir. 2007). The Sixth Circuit held that the "expansive application" of §

7422 did not extend to preempt the plaintiffs' claims because the defendant "was not acting as a

collection agent for or on behalf of the IRS." *Id.* at 564-65.

Even though the defendant in *Mikulski* never collected the plaintiffs' taxes, while the

Hospital did withhold Plaintiffs' taxes, the reasoning of the *Mikulski* court is still applicable here

because Plaintiffs are not suing the Hospital for its actions as a tax collector, but for completely

separate actions and omissions, which they allege resulted in negative tax consequences. *See*

*Davidson v. Henkel Corp.*, No. 12-CV-14103, 2013 WL 3863981, at *1, *5 (E.D. Mich. July 24,

2013) (holding that the claims were not preempted by § 7422 where the defendants were the

plaintiff's employers responsible for tax collection because "[h]ere, Plaintiff is not challenging

Defendants' withholding of FICA taxes, rather he is challenging their failure to follow the

special timing rule resulting in a reduction to his benefits" and "devastating tax consequences").

"The mere fact that the plaintiffs' damages are calculated in terms of overpaid income

taxes does not necessitate the conclusion that the plaintiffs' claim[s] must actually be . . . for a

federal income tax refund." *Mikulski*, 501 F.3d at 565. Therefore, the Hospital's motion to

dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction is denied.

### B. Claims

#### i. Unjust Enrichment

Both the Childers and Simon Complaints assert claims against the Hospital for unjust

enrichment. These claims are sufficient to survive a motion to dismiss, as both Complaints

sufficiently allege all of the claim's elements.

"The basic elements of an unjust enrichment claim in New York require proof that (1)

defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd.*

*P'ship v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *accord Clark v. Daby*, 751 N.Y.S.2d 622, 623 (3d Dep't 2002).

Both Complaints allege that the Hospital was enriched by gaining valuable consideration for giving up its right to file FICA refund claims for its Cornell residents and fellows during the relevant time period; that this enrichment was at Plaintiffs' expense, as they received no consideration for a bargain that effectively deprived them of their ability to receive refunds; and that equity and good conscience therefore require restitution to Plaintiffs.

The Hospital argues that it did not have the capacity to bargain away Plaintiffs' rights to FICA refunds and that the Settlement did not prevent Plaintiffs from filing their own protective refund claims; therefore, even if the Hospital was enriched by the Settlement, it was not at Plaintiffs' expense. This argument fails.

Both Complaints allege that the Hospital kept the Settlement secret from Plaintiffs and did not advise them to file their own claims. They also allege that the Hospital knew that absent its own action to protect these claims, Plaintiffs would not do so because they knew nothing of the issue or the right to file protective claims. Drawing inferences in Plaintiffs' favor, it is logical that this mindset informed the Hospital's negotiations with the IRS and that the value of the Hospital's offer to forfeit the rights at issue was quantified by both the Hospital and the IRS with the understanding that most residents and fellows would not file their own protective claims.

This situation is analogous to one about which courts have expressed concern: "that employers will profit from erroneously withholding FICA tax from the wages of its employees then subsequently recovering refunds of the amounts withheld without informing, or repaying, the employees." *See United States. v. Allen*, No. 1:91CV0244, 1992 WL 437652, at *4-5, *5 n.2 (N.D. Ohio 1992) (listing cases and holding that the employer "recovered a windfall of sorts by

receiving a refund of amounts withheld from the wages of the [employees] and by retaining, and not repaying, those amounts to the [employees]").

The Hospital also argues that it did not retain what Plaintiffs are seeking to recover, as the Hospital turned over the withheld FICA taxes to the IRS. This argument also fails, as Plaintiffs are not seeking to recover the FICA taxes withheld, but the amount by which the Hospital benefited at Plaintiffs' expense by entering into the Settlement. Therefore, the Hospital's motion to dismiss Plaintiffs' claims for unjust enrichment is denied.

### ii. Breach of Fiduciary Duty

Both the Childers and Simon Complaints assert claims against the Hospital for breach of fiduciary duty. These claims are sufficient to survive a motion to dismiss, as both Complaints sufficiently allege all of the claim's elements. While the complaints do not sufficiently allege that a fiduciary relationship existed at the outset of the relationship between the Hospital and Plaintiffs, they do sufficiently allege that a fiduciary duty arose when the Hospital entered into negotiations with the IRS that included bargaining about the right to file FICA refund claims related to Plaintiffs.

Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'n, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *accord Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009). "A fiduciary relationship exists under New York law 'when one . . . is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1ˢᵗ Dep't 1987)).

New York law recognizes not only those fiduciary relationships "the law has long adopted . . . but also more informal relationships where it can be readily seen that one party

14

reasonably trusted another." *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 151 (2d Cir. 1993).

Therefore, "the existence of fiduciary relationships under New York law cannot be determined

by recourse to rigid formulas." *Ciccone v. Hersh*, 530 F. Supp.2d 574, 577 (S.D.N.Y. 2008)

(internal quotation marks omitted); *accord Apple Records, Inc. v. Capitol Records, Inc.*, 529

N.Y.S.2d 279, 283 (1st Dep't 1988).

### 1. No Fiduciary Duty in First Instance

The Childers and Simon Complaints have not sufficiently alleged a baseline relationship

between themselves and the Hospital giving rise to a fiduciary duty.

As an initial matter, "employment relationships do not create fiduciary relationships."

*Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dep't 2009). Additionally, "a typical student-

university relationship does not, *without more*, establish a fiduciary relationship between student

and university." *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 169 (E.D.N.Y. 2010) (citing

*Moy v. Adelphi Inst.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994). Courts have specifically held that

the relationship between medical residents and their teaching hospitals is not, as a matter of law,

a fiduciary one. *See Golek v. Saint Mary's Hosp., Inc.*, 133 Conn. App. 182, 193 (2012); *Ryan v.

Univ. of N.C. Hosps.*, 609 S.E.2d 498 (N.C. Ct. App. 2005).

The Complaints allege that Plaintiffs reposed their confidence and trusted in the Hospital,

which had superior knowledge and information. However, "courts routinely have held that

conclusory allegations of a special relationship [or] complete trust and confidence are

insufficient to state a claim of a fiduciary duty." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d

243, 275 (S.D.N.Y. 2006) (internal quotation marks omitted). "Moreover, the Court is not

required to credit mere legal conclusions that are dressed up as factual allegations that a

defendant was in a fiduciary relationship with a plaintiff." *Faktor v. Yahoo! Inc.*, No. 12 Civ.

5220, 2013 WL 1641180, at *3 (S.D.N.Y. 2013) (internal quotation marks omitted).

Nothing in the Complaints' allegations establishes that the Hospital had, in the first instance, a fiduciary duty to file FICA refund claims on Plaintiffs' behalf or otherwise advise Plaintiffs regarding their taxes.

### 2. Hospital Assumed Fiduciary Duty with the Settlement

The Childers and Simon Complaints do sufficiently allege that the Hospital assumed a fiduciary duty to Plaintiffs when the Hospital entered into negotiations with the IRS that included bargaining about the right to file FICA refund claims related to Plaintiffs.

### a. Fiduciary Duty to Consider Employees in Refund Claim

When an employer files a FICA refund claim for itself, it has a statutory duty to ensure that its affected employees also receive a refund. *See* 26 C.F.R. § 31.6402(a)-2(a)(ii) ("No refund or credit pursuant to this section for employer tax will be allowed unless the employer has first repaid or reimbursed its employee or has secured the employee's consent to the allowance of the claim for refund and includes a claim for the refund of such employee tax."); *see also Mills v. United States*, 890 F.2d 1133, 1136 (11th Cir. 1989); *Allen*, 1992 WL 437652, at *5 ("[I]n order to receive a refund of its portion of FICA taxes purportedly made mistakenly on behalf of its employees, an employer must first take certain steps . . . to ensure that employees are treated fairly and receive the benefit of any refund.").

Thus, "the FICA statutory system essentially imposes a duty on the employer to act on both its own and its employee's behalf." *Mills*, 890 F.2d at 1136. Although no court has yet used the word "fiduciary" when describing this duty, courts have described the duty employers have in collecting taxes as fiduciary with respect to the IRS. *See, e.g., Hornsby v. Internal Revenue Serv.*, 588 F.2d 952, 953 (5th Cir. 1979) ("Responsible persons owe a fiduciary obligation to care properly for the funds that are temporarily entrusted to them for the ultimate use of the United States."). Refunding taxes is the converse of collecting taxes and similarly

involves having funds entrusted to the employer for the ultimate benefit of another, the employees.

Consequently, when an employer files for a refund of FICA taxes and therefore has a duty to ensure that its employees receive the benefit of any refund, that employer is acting as a fiduciary for those employees.

> One acts in a 'fiduciary capacity' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.

*United States v. Chestman*, 947 F.2d 551, 568-69 (2d Cir. 1991); *accord Bd. of Managers of Fairways at N. Hills Condo. v. Fairway at N. Hills*, 603 N.Y.S.2d 867, 869 (2d Dep't 1993).

"The common law has recognized that some associations are inherently fiduciary," including relationships "between attorney and client, executor and heir, guardian and ward, principal and agent, trustee and trust beneficiary, and senior corporate official and shareholder." *Chestman*, 947 F.2d at 568. However, "this list is by no means exhaustive" and "the existence of fiduciary duties in other common law settings . . . is anything but clear." *Id.* at 567-68.

What is clear is that the hallmark of a fiduciary relationship is one party's handling of money or property for a second party's best interest. *See id.* at 569. "In relying on a fiduciary to act for his benefit, the beneficiary of the relation may entrust the fiduciary with custody over property of one sort or another." *Id.* "Because the fiduciary obtains access to this property to serve the ends of the fiduciary relationship, he becomes duty-bound not to appropriate the property for his own use." *Id.*

When an employer is under a duty to ensure that its employees receive the benefit of FICA refunds, the employer is handling money for the benefit of the employees and may not appropriate this money for itself. The employer is entrusted with the employees' refunds by

statute, and the employees are entitled to rely on the employer to act for their benefit. This duty

therefore qualifies as fiduciary.

### b. Application to What Happened Here

If the Hospital had filed a refund claim for itself, it would have been under a statutory

duty to ensure that Plaintiffs also received a refund, either by reimbursing Plaintiffs directly or

by including a refund claim for Plaintiffs. *See* 26 C.F.R. § 31.6402(a)-2(a)(ii) (2013). Here, the

Hospital did not file a claim for a refund. Plaintiffs allege that, instead, the Hospital used the

value of its own and Plaintiffs' potential refund claims as a bargaining chip in negotiations with

the IRS, resulting in a more favorable Settlement for the Hospital.

Assuming the allegations to be true, the Hospital received a de facto refund, or at least

value for relinquishing its own refund claims related to Plaintiffs, without considering Plaintiffs,

who received nothing. Therefore, a reasonable jury could find that the Hospital assumed a

fiduciary duty to file for a refund on behalf of Plaintiffs, or otherwise reimburse Plaintiffs, just as

if it had filed for a refund. *See Muller-Paisner v. TIAA*, 528 Fed. Appx. 37, 41-42 (2d Cir. 2013)

(holding that a reasonable jury could conclude that a party had voluntarily assumed a fiduciary

duty where none existed before).

The Complaints also allege that the Hospital gained valuable consideration in the

Settlement by giving up the right to file refund claims on behalf of Plaintiffs, and that the

Hospital knew that Plaintiffs were unlikely to file their own timely claims since the Hospital

never told them about the need to do so. Therefore, the Hospital likely retained value not only

from its own potential refund claim, but also from Plaintiffs' potential refund claims, without

sharing it with or even informing Plaintiffs. This sounds like a classic breach of fiduciary duty –

an entity in a position of power over the funds of another appropriating those funds for its own

use. *See Chestman*, 947 F.2d at 569.

Whether a fiduciary duty exists "is necessarily fact-specific to the particular case." *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998); *accord Eurycleia Partners v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 561 (2009); *Abercrombie*, 438 F. Supp. 2d at 274. Therefore, "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Abercrombie*, 438 F. Supp. 2d at 274. On a motion to dismiss, it is often "'impossible to say that plaintiff will be unable to prove the existence of a fiduciary relationship.'" *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (quoting *Penato v. George*, 383 N.Y.S.2d 900, 905 (2d Dep't 1976)); *see also Apple Records, Inc.*, 529 N.Y.S.2d at 283 (holding that "while the contract did not establish a formal fiduciary relationship, the pleadings were sufficient to raise an issue as to the existence of an informal one").

The Second Circuit has held that "the existence and extent of any fiduciary duty" may "be resolved at trial based on a careful review of the parties' relationship." *Muller-Paisner*, 528 Fed. Appx. at 39. At a minimum, if "defendants are in control and possession of the facts which are decisive of this question," then "discovery should be permitted" before dismissing the claim. *Penato*, 383 N.Y.S.2d at 905. Here, it would be premature to decide whether the Hospital assumed a fiduciary duty when entering into the Settlement because all of the relevant facts regarding the Settlement and its negotiations have not been discovered and considered. However, the allegations are sufficient for this claim to survive a motion to dismiss.

The Hospital argues that, even assuming a fiduciary duty existed, the Complaints fail to allege a breach of the duty as the Settlement did not prevent Plaintiffs from filing their own protective refund claims. This argument is incorrect. If the Hospital had a fiduciary duty to act in Plaintiffs' best interests when negotiating with the IRS concerning the FICA refunds, then the Complaints sufficiently allege that the Hospital breached that duty when it put its own interests above the interests of Plaintiffs in negotiating the Settlement. If an employer filed a FICA

refund claim on its own behalf but excluded the employee portion from that claim, as discussed above, that act would be a breach of a fiduciary duty, even though the employee could file his or her own claim. Whether Plaintiffs could have filed their own claims may be relevant when discussing mitigation of damages, but cannot absolve the Hospital of its own responsibilities.

Drawing all inferences in Plaintiffs' favor, the allegations regarding this claim are sufficient to survive a motion to dismiss. Therefore, the Hospital's motion to dismiss Plaintiffs' claims for breach of fiduciary duty is denied.

### iii. Fraud

The Childers Complaint asserts a claim against the Hospital for fraud. This claim is sufficient to survive a motion to dismiss, as the Childers Complaint sufficiently alleges all of the claim's elements, including a duty to disclose and reasonable reliance.

Under New York law, the elements of a claim for fraud are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *accord Albert Apartment Corp. v. Corbo Co.*, 582 N.Y.S.2d 409, 410 (1st Dep't 1992).

Where, as here, a claim for fraud is based on a material omission, the complaint also must allege a duty to disclose. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *accord Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (1st Dep't 2003); *see also Mandarin Trading Ltd. v Wildenstein*, 16 N.Y.3d 173, 179 (2011). A duty to disclose arises "where the parties enjoy a fiduciary relationship" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Lerner*, 459 F.3d at 292.

The Hospital argues that the fraud claim fails due to the lack of a fiduciary duty on the part of the Hospital. However, as discussed above, the Childers Complaint alleges facts

sufficient for a reasonable jury to find that a fiduciary duty arose when the Hospital entered into negotiations with the IRS that included bargaining about the right to file FICA refund claims related to Plaintiffs.  Alternatively, the Childers Complaint alleges that the Hospital had superior knowledge compared to Plaintiffs regarding FICA tax issues; that the information was not readily available to Plaintiffs; and that the Hospital knew that, absent action on its part, Plaintiffs would not file their own claims because they knew nothing of the issue.

The Hospital also argues that the fraud claim must fail because Plaintiffs cannot claim reasonable reliance on the Hospital's representations or omissions while Plaintiffs had access to all material information, including the fact that they could file their own protective claims.  However, the Childers Complaint alleges that Plaintiffs did rely on the Hospital and that they did not have access to all material information, specifically, information regarding the Hospital's Settlement with the IRS.  Thus, the Childers Complaint alleges sufficient facts, if proven true, from which a reasonable jury could find reasonable reliance.

"[R]easonable reliance is often a question of fact for the jury rather than a question of law for the court."  *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) L.L.C.*, 648 F.3d 68, 81 (2d Cir. 2011).  While "a sophisticated plaintiff cannot establish . . . justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it," this rule does not alter the general rule that "the inquiry [into the reasonableness of reliance] is fact-specific" and "the entire context" is to be considered.  *Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 609 (S.D.N.Y. 2011) (internal citation omitted).  A party's failure to show perfect due diligence does not "remove any question of fact with respect to the reasonableness of their reliance."  *In re Lavender*, 399 Fed. Appx. 649, 652 (2d Cir. 2010).

Drawing all inferences in Plaintiffs' favor, the allegations in the Childers Complaint regarding the fraud claim are sufficient to survive a motion to dismiss, and the Hospital's motion to dismiss the fraud claim is denied.

### iv. Constructive Fraud

The Childers Complaint asserts a claim against the Hospital for constructive fraud. This claim is sufficient to survive a motion to dismiss, as the Childers Complaint sufficiently alleges all of the claim's elements.

"The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." *Wilson v. Dantas*, 746 F.3d 530, 536 n.2 (2d Cir. 2014) (quoting *Klembczyk v. Di Nardo,* 705 N.Y.S.2d 743, 744 (4th Dep't 1999)); *see also E*TRADE Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 119 (2d Cir. 2010). For the reasons discussed above regarding the claims for fraud and breach of fiduciary duty, the Childers Plaintiffs' allegations regarding this claim are sufficient, and the Hospital's motion to dismiss the constructive fraud claim is denied.

### v. Negligent Misrepresentation

The Childers Complaint asserts a claim against the Hospital for negligent misrepresentation. This claim is sufficient to survive a motion to dismiss, as the Childers Complaint sufficiently alleges all of the claim's elements, including a special relationship between the parties.

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv. Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *accord Eiseman v. State*, 70 N.Y.2d 175, 187 (1987).

The Hospital argues that this claim must fail because the Childers Complaint does not sufficiently allege a special relationship between the parties and because an employer-employee relationship is not a special relationship as a matter of law.  The Hospital is correct that Plaintiffs' status as employees does not establish the requisite special relationship.  However, as discussed above, the Childers Complaint alleges facts sufficient for a reasonable jury to find that a fiduciary duty arose when the Hospital entered into negotiations with the IRS that included bargaining about the right to file FICA refund claims related to Plaintiffs.

"[T]he standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty."  *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 F. App'x 107 (2d Cir. 2010) .  Therefore, the Hospital's motion to dismiss the negligent misrepresentation claim is denied.

### vi.  Negligence

The Childers Complaint asserts a claim against the Hospital for negligence.  This claim is sufficient to survive a motion to dismiss, as the Childers Complaint sufficiently alleges all of the claim's elements, including a duty on the part of the Hospital and proximate cause.

"Under New York law . . . a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)).

The Hospital argues that this claim must fail because the Childers Complaint does not sufficiently allege a duty on the part of the Hospital.  This is incorrect.  While the Childers Complaint does not allege that the Hospital had a duty in the first instance to file FICA refund

claims on Plaintiffs' behalf or to otherwise advise them concerning their taxes, it does sufficiently allege that a duty arose when the Hospital entered into negotiations with the IRS that included the right to file FICA refund claims related to Plaintiffs.

The Hospital also argues that this claim is insufficient because the Childers Complaint does not allege that the Hospital proximately caused any damages, specifically that Plaintiffs could have received FICA refunds only through the Hospital's actions. This argument is also incorrect. An action may be considered a proximate cause if there is a "'direct relation between the injury asserted and the injurious conduct alleged.'" *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). The Childers Complaint sufficiently alleges a direct relationship between Plaintiffs' damages and the Hospital's actions and omissions.

While Plaintiffs' failure to file their own protective claims may be relevant to a contributory negligence analysis, it does not necessarily negate proximate cause on the part of the Hospital. Therefore, the Hospital's motion to dismiss the negligence claim is denied.

### vii. Breach of Contract

The Childers Complaint asserts a claim against the Hospital for breach of contract. However, the Childers Complaint fails to plead adequately a claim for breach of either an express or an implied contract.

Under New York law, the elements of a claim for breach of contract are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted); *accord Palmetto Partners v. AJW Qualified Partners,* 921 N.Y.S.2d 260, 264 (2d Dep't 2011).

Regarding the first element, to plead the existence of an agreement, a complaint must "allege the essential terms of the parties' purported contract 'in nonconclusory language,'

24

including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, at *2 (2d Cir. 1998) (quoting *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995)); *see also Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991) (dismissing counterclaims for breach of contract where "[n]o particular provision of any agreement [was] set forth" in the pleading).

A complaint "fails to sufficiently plead the existence of a contract" if it does not provide "factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand*, 455 Fed. Appx. 102, 104 (2d. Cir. 2012); *see also Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202-03 (S.D.N.Y. 2008) (dismissing counterclaims for breach of contract where the pleading did "not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [the other party's] assent to its terms").

Here, the Childers Complaint alleges, in a conclusory fashion, that there was "an express contractual relationship between the parties," but it does not include any details regarding this alleged express contract, including the date it was entered into or its subject matter. Moreover, the Childers Complaint fails to allege any specific provisions of the contract, but simply alleges that the Hospital breached the implied covenant of good faith and fair dealing.

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1575 (2d Cir. 1994); *accord Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). However, "[t]he implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract" and cannot "add [ ] to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (internal quotation marks omitted) (second alteration in original); *accord Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335 (1987).

The Childers Complaint alleges that the Hospital breached the implied covenant of good faith and fair dealing by entering into the Settlement and by failing to disclose the terms of the Settlement to Plaintiffs before the time to file their FICA refund claims expired. However, because the Childers Complaint does not allege any mutually agreed upon terms of the alleged express contract, including any terms consistent with an obligation to refrain from entering into the Settlement or to disclose its terms to Plaintiffs, it does not adequately allege a breach of the implied covenant of good faith and fair dealing.

The Childers Complaint also alleges that the Hospital breached an implied contract between the parties requiring the Hospital to "take all reasonable measures to collect and refund any FICA taxes wrongfully withheld from Plaintiffs." "Under New York law, '[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct.'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 369 (1975)) (alteration in original). "A contract implied in fact is as binding as one that is express, and similarly 'requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'" *Id.* (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94 (1999)).

The Childers Complaint does not allege any conduct on the part of the Hospital, or any other facts, sufficient to infer an intention on the part of the Hospital to be bound in a contractual relationship with Plaintiffs regarding FICA taxes or sufficient to infer that the Hospital received consideration for entering into the alleged agreement. *See Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 304-06 (S.D.N.Y. 2011) (dismissing breach of contract claim where the plaintiff did not allege facts suggesting that the defendant intended to be bound to the terms of the alleged implied contract).

Thus, the Childers Complaint fails to allege the existence of an agreement between Plaintiffs and the Hospital, either express or implied. Additionally, the Childers Complaint does not allege that Plaintiffs performed their own obligations under any of the alleged contracts. Accordingly, the Hospital's motion to dismiss the Childers Plaintiffs' claim for breach of contract is granted.

### C. Statute of Limitations

The Hospital argues that all of Plaintiffs' claims are time barred due to the applicable statutes of limitations, which, under New York law, are either three or six years.[2] However, none of Plaintiffs' claims can be found to be time barred as a matter of law at this stage of litigation.

### i. Accrual

As it has been established that the Hospital had no initial duty to act on Plaintiffs' behalf with regard to their tax refunds, the alleged wrongful act and/or breach took place, and therefore Plaintiffs' claims accrued, when the Hospital negotiated and entered into the Settlement in 1999. These lawsuits were both filed approximately 14 years later in August 2013.[3]

---

[2] The statute of limitations for unjust enrichment is six years from the alleged wrongful act. *Whittemore v. Yeo*, 977 N.Y.S.2d 15 (1st Dep't 2013). The statute of limitations for breach of fiduciary duty is three years from the alleged breach, but where based on actual fraud, six years from the alleged fraud or two years from the date the party discovered or, with due diligence, could have discovered it. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164, 167 (1st Dep't 2003). The statute of limitations for fraud is six years from the date of the alleged fraudulent act or two years from the date the party discovered or, with due diligence, could have discovered it. *Id.* at 167. The statute of limitations for constructive fraud is six years from the date of the alleged fraud. *Jaliman v. D.H. Blair & Co.*, 964 N.Y.S.2d 112, 114 (1st Dep't 2013). The statute of limitations for negligent misrepresentation is six years from the date of the alleged misrepresentation. *Espie v. Murphy*, 825 N.Y.S.2d 537, 539 (2d Dep't 2006). The statute of limitations for negligence is three years from the alleged negligent act. *Cator v. Bauman*, 833 N.Y.S.2d 811, 812 (4th Dep't. 2007).

[3] Plaintiffs argue that their claims did not accrue until, at the earliest, March 2010 when the IRS announced that the Student Exemption was applicable to medical residents and; therefore, the claims for which there is a six-year statute of limitations were timely brought in August 2013.

### ii. Fraud Discovery Accrual Rule

Plaintiffs argue that their fraud and breach of fiduciary duty claims are timely under the applicable two-year statutes of limitations because these claims did not accrue until Plaintiffs could have discovered the alleged underlying fraud, which they argue was not until the Hospital disclosed the terms of the Settlement sometime in 2013. Plaintiffs are correct if it is determined on a full factual record that they could not have discovered the alleged fraud, through diligence, until a date less than two years before the filing of these lawsuits.

According to the fraud discovery accrual rule, a claim for fraud is timely if it is commenced within two years from the date the party discovered the fraud or, with due diligence, could have discovered it. *See Kaufman*, 760 N.Y.S.2d at 167. The discovery accrual rule also applies to fraud-based breach of fiduciary duty claims, but not to constructive fraud claims. *See id.* at 167, 167 n.4.

"An inquiry as to the time that a plaintiff could, with reasonable diligence, have discovered the fraud turns upon whether a person of ordinary intelligence possessed knowledge of facts from which the fraud could be reasonably inferred." *Id.* at 167 (internal citation and quotation marks omitted). Here, nothing in the Complaints clearly shows that the fraud and breach of fiduciary duty claims are untimely. When Plaintiffs discovered or could have discovered, through diligence, the alleged fraud will need to be determined on a full factual record.

### iii. Tolling

Plaintiffs argue that the statutes of limitations on all of their claims should be tolled due to the Hospital's concealment of the Settlement. A decision regarding whether tolling is appropriate and for how long also will need to be made on a full factual record.

---

This is incorrect because, as discussed above, the claims accrued at the time of the alleged wrongful act.

"[T]he law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations." *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *accord Schirano v. Paggioli*, 472 N.Y.S.2d 391, 393-94 (2d Dep't 1984) ("[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action." (internal quotation marks omitted)). Whether a defendant should be estopped from asserting the statute of limitations as an affirmative defense "is not a question of law, but rather a question of fact, which should be fully developed and determined [at] trial." *Schirano*, 472 N.Y.S.2d at 394.

"[A] statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted). If the plaintiff so establishes these three facts, then the statute of limitations "does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (internal quotation marks omitted).

The Hospital argues that the statutes of limitations should not be tolled because Plaintiffs' complaints failed to plead facts establishing the right to tolling, specifically facts concerning due diligence. This is incorrect. As discussed above, a complaint does not need "to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas*, 480 F.3d at 640.

### IV.    Conclusion

For the reasons discussed above: (1) the Hospital's motion to dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction is DENIED; (2) the Hospital's motion to dismiss Plaintiffs' claims for unjust enrichment is DENIED; (3) the Hospital's motion to dismiss Plaintiffs' claims for breach of fiduciary duty is DENIED; (4) the Hospital's motion to dismiss the Childers Plaintiffs' claim for fraud is DENIED; (5) the Hospital's motion to dismiss the Childers Plaintiffs' claim for constructive fraud is DENIED; (6) the Hospital's motion to dismiss the Childers Plaintiffs' claim for negligent misrepresentation is DENIED; (7) the Hospital's motion to dismiss the Childers Plaintiffs' claim for negligence is DENIED; and (8) the Hospital's motion to dismiss the Childers Plaintiffs' claim for breach of contract is GRANTED.

SO ORDERED.

Dated: June 23, 2014
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE